**ORAL ARGUMENT HAS BEEN SCHEDULED FOR
MARCH 22, 2016**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**Nos. 11-1479, 12-1069, 12-1070, 12-1073, 12-1086,
15-1101, 15-1105, and 15-1107
(Consolidated)**
_____

**UNITED AIRLINES, INC., *et al.*,**
*Petitioners,*

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION AND
UNITED STATES OF AMERICA,**
*Respondents*

_____

**ON PETITION FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION**
_____

**JOINT REPLY BRIEF OF SHIPPER PETITIONERS**

Richard E. Powers, Jr.
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
202-344-4360

Counsel for United Airlines, Inc., Delta
Air Lines, Inc., Southwest Airlines Co.,
and American Airlines, Inc.


January 15, 2016
February 5, 2016 (Final Brief)

Thomas J. Eastment
Gregory S. Wagner
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
202-639-7700

Counsel for ExxonMobil Oil
Corporation and BP West Coast
Products LLC

Steven A. Adducci
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
202-344-4361

Melvin Goldstein
Goldstein & Associates, P.C.
1757 P Street, N.W.
Washington, D.C.  20036
202-872-8740

Counsel for Chevron Products Company
and Valero Marketing and Supply
Company

Counsel for Tesoro Refining and
Marketing Company LLC

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE ARGUMENT ................................................................1

II.   ARGUMENT ................................................................................................4

    A.    FERC's Grant Of A Tax Allowance Cannot Be Sustained Because It Is Based On The Factually Erroneous Assertion That Income Taxes Actually Borne By Partner/Investors Are Instead Borne By The Partnership Pipeline. ...................................................4

        1.    FERC And SFPP's Briefs Do Not Dispute The Central Elements Of Shippers' Double Recovery Argument .................5

        2.    FERC And SFPP Provide No Justification For Assessing The Double Recovery Question On The Factually Incorrect Assumption That Taxes On Partnership Income Are Borne By The Pipeline. ......................................................8

            a.    *ExxonMobil* Does Not Authorize FERC To Ignore Uncontroverted Facts When Assessing The Double Recovery Of Partner/Investor Taxes. .................................8

            b.    FERC's First Tier Label Does Not Provide A Reasoned Justification For Its Denial Of Double Recovery. ...........................................................................13

            c.    The Double Recovery Of Partner/Investor Taxes Is Not Mandated By Statute. ...........................................14

            d.    SFPP's Own Witness Illustrated The Double Recovery, And Neither SFPP Nor FERC Has Demonstrated Anything To The Contrary ........................15

    B.    FERC's Effort To Insulate Its Orders From Review On Procedural Grounds Should Be Rejected. ...........................................17

        1.    The Double Recovery Issue Raised Here Is Different From The Issue Resolved In *ExxonMobil* And In The FERC Orders There On Review. ...............................................17

i

2.     Collateral Estoppel Is Inapplicable Even If The Double
       Recovery Issue Had Been Resolved In *ExxonMobil*. ...............20

3.     FERC Cannot Evade Review Because It Reopened Its
       Policy In The Orders On Review................................................21

III.    CONCLUSION ...............................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

COURT CASES

*Bechtel v. FCC,*
    957 F.2d 873 (D.C. Cir. 1992)........................................................................22

*Bluewater Network v. EPA,*
    370 F.3d 1 (D.C. Cir. 2004)..........................................................................23

*BP West Coast Products, LLC v. FERC,*
    374 F.3d 1263 (D.C. Cir. 2004)....................................5, 6, 7, 9, 10, 19

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962)......................................................................................20

*\*CTIA-The Wireless Ass'n v. FCC,*
    466 F.3d 105 (D.C. Cir. 2006)......................................................................23

*Edison Elec. Inst. v. EPA,*
    996 F.2d 326 (D.C. Cir. 1993)......................................................................23

*\*ExxonMobil Oil Corp. v. FERC,*
    487 F.3d 945 (D.C. Cir. 2007)..... 2, 3, 8, 9, 10, 11, 12, 13, 17, 18, 19, 20, 22, 24

*\*FPC v. Hope Nat. Gas Co.,*
    320 U.S. 591 (1944)................................................................................6, 12

*FTC v. Texaco, Inc.,*
    555 F.2d 862 (D.C. Cir. 1977)......................................................................23

*ICC v. Brotherhood of Locomotive Eng'rs,*
    482 U.S. 270 (1987)......................................................................................23

*\*Indep. Cmty Bankers of Am. v. Bd. of Governors of the Fed. Reserve
    Sys.,*
    195 F.3d 28 (D.C. Cir. 1999)........................................................................22

*Jack Faucett Assoc., Inc. v. Am. Tel.& Tel. Co.,*
    744 F.2d 118 (D.C. Cir. 1984)......................................................................17

*Moses v. Howard Univ. Hosp.*,
   606 F.3d 789 (D.C. Cir. 2010)..........................................................18

*Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*,
   158 F.3d 135 (D.C. Cir. 1998)..........................................................23

*Nat'l Mining Ass'n v. U.S. Dep't of the Interior*,
   70 F.3d 1345 (D.C. Cir. 1995)..........................................................23

*Ohio v. EPA*,
   838 F.2d 1325 (D.C. Cir. 1988)........................................................23

*P&V Enter. v. U.S. Army Corps of Eng'rs*,
   516 F.3d 1021 (D.C. Cir. 2008)........................................................23

*Second Taxing Dist. of the City of Norwalk v. FERC*,
   683 F.2d 477 (D.C. Cir. 1982).......................................17, 22, 23, 24

*Southern Co. Servs., Inc. v. FERC*,
   416 F.3d 39 (D.C. Cir. 2005)............................................................17

*Taylor v. Sturgell*,
   553 U.S. 880 (2008).................................................................20, 21

**ADMINISTRATIVE CASES**

*Policy Statement on Income Tax Allowances*, 111 FERC ¶ 61,139
   (2005)...................................................................................1, 5, 6, 9

*SFPP, L.P.*,
   111 FERC ¶ 61,334 (2005)................................................................9

*SFPP, L.P.*,
   121 FERC ¶ 61,240 (2007)..............................................................19

*SFPP, L.P.*,
   122 FERC ¶ 61,133 (2008)..............................................................19

*SFPP, L.P.*,
   131 FERC ¶ 61,180 (2010)..............................................................20

*SFPP, L.P.*,
 *134 FERC* ¶ 61,201 (2011)..............................................................................20

_____

[*]Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| ALJ | Administrative Law Judge |
| After-investor-tax return | The return investors receive after they pay taxes on their investment income |
| After-pipeline-tax return | The return a pipeline receives after it pays taxes on its income |
| Before-investor-tax return | The return investors receive before they pay taxes on their investment income |
| Before-pipeline-tax return | The return a pipeline receives before it pays taxes on its income |
| Cost of Service | The cost of providing pipeline service, including a reasonable rate of return |
| DCF Method | The discounted cash flow method the Commission uses to set a regulated interstate pipeline's rate of return on equity |
| East Line | SFPP, L.P.'s refined petroleum products pipeline facilities extending from El Paso, Texas to Arizona |
| FERC or Commission | Federal Energy Regulatory Commission |
| ICA | Interstate Commerce Act, 49 U.S.C. § 1, *et seq.*[*] |

---

[*] In 1978 the ICA was partially repealed and recodified. However, Public Law No. 95-473, § 4(c) (92 Stat. 1466-70 (1978)) provides that those portions of the ICA that were repealed and recodified in 1978 nevertheless remain in effect as they existed on October 1, 1977, to the extent that these laws relate to the movement of oil by pipeline and the rates and charges related thereto. Subsequently, the ICA relating to oil pipeline regulation was published as an appendix to Title 49 of the United States Code and cited as 49 App. U.S.C. § 1, *et seq.* (1988).  However, the ICA relating to oil pipelines no longer is published as an appendix in the current versions of the U.S. Code.  The pertinent sections of the ICA are appended in Attachment 1 hereto.

| | |
|---|---|
| Investor-level taxes | Income taxes incurred and paid by investors on their investment income |
| KMEP | Kinder Morgan Energy Partners, L.P. |
| MLP | Master Limited Partnership, which is a publicly traded partnership |
| Pipeline-level taxes | Income taxes incurred and paid by a pipeline entity on its income |
| ROE | Return on Equity |
| Shareholders | Owners of shares in a corporation |
| Tax Allowance | An allowance included in a pipeline's cost of service to reimburse the pipeline for its income tax expense |
| Units | The ownership shares in a Master Limited Partnership |
| Unitholders | The partners, which own units in a Master Limited Partnership |
| West Line | SFPP, L.P.'s refined petroleum products pipeline facilities extending from California to Arizona |

Petitioners United Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., American Airlines, Inc., BP West Coast Products LLC, Chevron Products Co., ExxonMobil Oil Corporation, Valero Marketing and Supply Company, and Tesoro Refining and Marketing Company LLC (collectively "Shippers") hereby file their Reply Brief.

## I.      SUMMARY OF THE ARGUMENT

There is no dispute that the taxes imposed on a partnership pipeline's income are borne by the partner/investors, not the pipeline.  There also is no dispute that income taxes borne by investors are recovered by a pipeline in its DCF-ROE, which is set using market data to determine the return actually required by investors to attract their capital investment.  It necessarily follows from these uncontroverted facts that awarding a Tax Allowance to a partnership pipeline to recover the tax costs borne by partner/investors, in addition to the pipeline's DCF-ROE, results in improper double recovery of these investor tax costs and in unjust and unreasonable rates.

FERC offers no justification for ignoring the pipeline's recovery of partner/investors' taxes in the DCF-ROE when assessing the question of double recovery.  FERC's only "explanation" is that its Tax Allowance Policy Statement[1]

---

[1] *Policy Statement on Income Tax Allowances*, 111 FERC ¶ 61,139 (2005) ("Tax Allowance Policy Statement" or "Policy Statement").

1

and *ExxonMobil*[2] found that taxes borne by partner/investors are "attributable to the pipeline."   In FERC's view, this determination dictates that the taxes be treated as "pipeline-level," rather than "investor-level," taxes when assessing the question of whether the taxes are recovered in the DCF-ROE and thereby recovered twice if a partnership pipeline is awarded a Tax Allowance.    FERC reads too much into *ExxonMobil*.   The Policy Statement and *ExxonMobil* found that partner/investor taxes are attributable to a partnership pipeline for purposes of finding that such taxes were a real, rather than "phantom," expense that is eligible for recovery in the pipeline's cost of service.   Nowhere does the Policy Statement or *ExxonMobil* find that partner/investors' taxes may be treated, contrary to fact, as pipeline-level taxes other than for the purpose of including them in a pipeline's cost of service, and neither makes any finding that it is reasonable for FERC to ignore the fact that these taxes are borne by investors and, therefore, are recovered in the partnership pipeline's cost of service through the DCF-ROE.

It is unreasonable for FERC to stretch the holdings of *ExxonMobil* into a blanket finding that partner/investor taxes are to be treated as if they were incurred by the pipeline and then use that characterization to ignore the fact that such taxes are recovered in the DCF-ROE.   FERC's position arbitrarily assumes away the double recovery rather than demonstrating that it does not occur.   FERC

---

[2] *ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945 (D.C. Cir. 2007) ("*ExxonMobil*").

does not argue, let alone establish, that partner/investor taxes are somehow an exception to the fact that, as FERC acknowledged in Paragraph 244 of Opinion 511, investor taxes are recovered in the DCF-ROE.

FERC attempts to sidestep the factually erroneous premise underlying its position by arguing that Shippers' challenge is a collateral attack on FERC's prior orders applying the Tax Allowance Policy Statement and on *ExxonMobil*. There is no merit to FERC's effort to insulate its orders from review. Neither *ExxonMobil*, nor FERC's orders there on review, addressed or resolved the question whether partner/investor taxes are recovered in the DCF-ROE and, therefore, whether partnership pipelines receiving a Tax Allowance improperly recover these tax costs twice. FERC should be estopped from arguing otherwise, as FERC in *ExxonMobil* urged the Court in its Brief not to address this specific issue because FERC viewed it as a separate question to be left for resolution with other "technical" issues then pending before the agency. FERC cannot reasonably argue that the double recovery issue was resolved in *ExxonMobil* when FERC itself told the Court in that case that the issue was not then before it.

Further, the record in this case established new facts and evidence, not before the Court in *ExxonMobil,* that demonstrate that granting a Tax Allowance to partnership pipelines results in a double recovery and, therefore, unjust and unreasonable rates. FERC held extensive adjudicatory hearings that examined the

3

double recovery issue and issued the voluminous orders now on review demonstrating that FERC fully reconsidered its Tax Allowance policy.  In these orders re-opening its Tax Allowance policy, FERC put forward new and revised justifications for its policy, concluding − with alleged mathematical certainty − that it had refuted the double recovery argument.  FERC's mathematical certainty is a mirage conjured from the single, factually incorrect assumption that the taxes borne by partner/investors are pipeline-level taxes that are not recovered in the DCF-ROE.  Having re-opened and reconsidered its policy, FERC's orders are subject to review based on the record it developed and on the reasoning on which its decision to grant a Tax Allowance now rests.

II.    ARGUMENT

    A.    **FERC's Grant Of A Tax Allowance Cannot Be Sustained Because It Is Based On The Factually Erroneous Assertion That Income Taxes Actually Borne By Partner/Investors Are Instead Borne By The Partnership Pipeline.**

    FERC's grant of a Tax Allowance in the orders on review cannot be sustained because it rests entirely on a factually incorrect assumption.  FERC and SFPP are completely silent on this central point, providing no explanation why the taxes borne by partner/investors are not, in fact, recovered in the DCF-ROE as FERC acknowledges in Opinion 511 at P 244.[3]  Once this false assumption is

---

[3] *SFPP, L.P.,* Opinion 511, 134 FERC ¶ 61,121 at P 244 (2011) ("Opinion 511"), R.967 (J.A.0506).

corrected, application of well-established principles to the record demonstrates that awarding a Tax Allowance to partnership pipelines results in a double recovery of partner/investors' tax costs and, therefore, unjust and unreasonable rates.

      1.    FERC And SFPP's Briefs Do Not Dispute The Central Elements Of Shippers' Double Recovery Argument.

FERC and SFPP's Briefs are most revealing in what they do not dispute about Shippers' argument that FERC erred in awarding a Tax Allowance to SFPP, a master limited partnership ("MLP") pipeline. These concessions reveal that the sole substantive basis for FERC's denial of the double recovery of partner/investor tax costs is the assertion that such tax costs must be assumed, contrary to fact, to be pipeline-level taxes.

    First, FERC and SFPP do not and cannot dispute that the income tax costs at issue are actually borne by partner/investors rather than the partnership pipeline. *See* Initial Shipper Brief at 23 (*citing* Opinion 511 at P 223 (J.A.0493-94) and Tax Allowances Policy Statement, 111 FERC ¶ 61,139 at P 33)). Corporate pipeline income is subject to two levels of taxation: once at the corporate pipeline level and again at the shareholder/investor level on dividends received. In contrast, partnership pipelines are not taxed at the partnership level; the only tax is borne by partner/investors. *See BP West Coast Products, LLC v. FERC,* 374 F.3d 1263, 1286 (D.C. Cir. 2004) ("*BP West*"). Thus, there is no genuine question that FERC's assumption underlying its entire analysis of

5

Shippers' double recovery argument − that taxes borne by partner/investors[4] are

pipeline-level taxes − is contrary to the uncontroverted record.

       <u>Second</u>, FERC and SFPP do not dispute that taxes borne by investors

are recovered in the DCF-ROE.  *See* Initial Shipper Brief at 14-20.  Under the DCF

method, which is founded on the longstanding principle of *Hope*[5], FERC uses

actual market data to determine the ROE (which is a before-investor-tax ROE)

needed both to cover income tax costs borne by investors and to provide an after-

investor-tax ROE sufficient to attract capital.  FERC expressly acknowledged this

point in Opinion 511, at P 244 (J.A.0506), and FERC and SFPP properly do not

disavow it in their Briefs.

       Given that the DCF method recovers investors' taxes, but not taxes

borne by a pipeline entity, it is critically important to be clear whose tax is being

discussed when using the terms "before-tax" and "after-tax".  But FERC confuses

matters by repeatedly being unclear on this point.  For example, FERC refers to the

DCF-ROE as an "after-tax" ROE.  FERC Brief at 8.  FERC's imprecision is

seriously misleading.  The DCF-ROE is an after-pipeline-tax, but a before-

investor-tax, ROE.  *See* Initial Shipper Brief at 18-20, 23-24.  Where a corporate

---

[4] Partner/investors pay tax on the pipeline income allocated to them.  They also pay taxes on cash distributions at the time of sale of their units.  *See* Tax Allowance Policy Statement, 111 FERC ¶ 61,139 at P 37 n.35.

[5] *FPC v. Hope Nat. Gas Co.,* 320 U.S. 591, 603 (1944).

pipeline incurs its own taxes, the after-pipeline-tax DCF-ROE does not recover the pipeline's taxes, so FERC properly awards a Tax Allowance to cover those tax costs and ensure that the full before-investor-tax DCF-ROE is available for distribution to shareholders. *Id.* at 23 (citing *BP West*, 374 F.3d at 1286). A partnership pipeline incurs no taxes so it is immaterial that the DCF-ROE is after-pipeline-tax. The partnership pipeline has no unrecovered tax expenses and so requires no Tax Allowance to ensure that the full DCF-ROE is available for distribution to unitholders. In this way a corporate pipeline with a Tax Allowance and a partnership pipeline without a Tax Allowance both receive a cost of service with a full after-pipeline-tax/before-investor-tax DCF-ROE available to distribute to shareholders and unitholders, respectively. Initial Shipper Brief at 23-24.

Third, FERC and SFPP concede that the tables purporting to prove there is no double recovery, as well as FERC's claim that the Schink Exhibits contain a "methodological error," are all based on the assumption that the taxes borne by partner/investors are pipeline-level taxes. FERC Brief at 27-29; SFPP Brief at 10. But as Shippers explained in their Initial Brief at 28-36, this assumption is factually incorrect and fails to account for recovery of the tax cost in the DCF-ROE. Correcting FERC's examples so as to treat the taxes borne by partner/investors as investor-level taxes shows that granting a Tax Allowance on top of the DCF-ROE results in a double recovery. *Id.* at 31-36.

Fourth, FERC and SFPP do not dispute that the double recovery of an element of a pipeline's cost of service is unjust and unreasonable. *See* Initial Shipper Brief at 21-24. As FERC itself states, its cost-of-service rate methodology sets rates at the level "to cover the pipeline's costs," including its tax costs, and an ROE sufficient to attract investment. FERC Brief at 7. A reasonable cost of service does not provide for recovery of a cost element twice.

Thus, FERC and SFPP's Briefs rest solely on the proposition that *ExxonMobil* dictates that, contrary to fact, taxes borne by partner/investors must be treated as pipeline-level taxes when assessing the double recovery issue. Under their view, the fact that taxes borne by investors are recovered in the DCF-ROE is irrelevant because partner/investor taxes are assumed to be pipeline-level taxes, which are not recovered in the DCF-ROE. As discussed next, there is no basis in *ExxonMobil* or in logic to sustain FERC's insistence that the double recovery argument must be assessed on the basis of a factually incorrect assumption.

2.     FERC And SFPP Provide No Justification For Assessing The Double Recovery Question On The Factually Incorrect Assumption That Taxes On Partnership Income Are Borne By The Pipeline.

a.     *ExxonMobil* Does Not Authorize FERC To Ignore Uncontroverted Facts When Assessing The Double Recovery Of Partner/Investor Taxes.

In FERC's view, *ExxonMobil* dictates that the Court affirm the orders here on review. FERC reads far too much into *ExxonMobil*. *ExxonMobil*

8

addressed FERC's orders on remand from *BP West Coast*.  The orders on remand

applied FERC's Tax Allowance Policy Statement, issued in a generic proceeding

following *BP West*, to the rates at issue in the orders on review in *BP West.  See*

*SFPP, L.P.,* 111 FERC ¶ 61,334 at P 1 (2005).  In *BP West*, the Court held that

FERC had failed to justify its *Lakehead* policy under which FERC awarded a Tax

Allowance for the portion of a MLP's units held by corporations but not for those

held by individuals.  *BP West,* 374 F.3d at 1290-91.  The Court found that FERC

appeared to be granting a Tax Allowance to partnership pipelines for phantom tax

expenses because such pipelines did not actually pay income taxes.  *Id.* at 1291-93.

On remand, the Commission applied its new Tax Allowance Policy

Statement, granting a Tax Allowance to partnership pipelines for both corporate

and individual unitholders that had a potential or actual tax liability on partnership

income.  *SFPP, L.P.,* 111 FERC ¶ 61,334 at P 21.  FERC reasoned that the taxes

borne by partners were real, not phantom, and reasonably attributable to the

pipelines and allocated to the pipelines' cost of service.  *Id.* at P 22.

In upholding FERC's reasoning in *ExxonMobil*, the Court concluded

"that taxes on the income received from a limited partnership should be allocated

to the pipeline and included in the regulated entity's cost-of-service."  *ExxonMobil*,

487 F.3d at 954; *see also* Tax Allowance Policy Statement, 111 FERC ¶ 61,139 at

P 33 (explaining that FERC's new policy replacing *Lakehead* was properly based

"on the more fundamental cost allocation principle of what costs, including tax costs, are attributable to regulated service, and therefore properly included in a regulated cost of service."). Thus, these decisions stand for the proposition that partner/investor taxes are reasonably part of a partnership pipeline's cost of service. They do not find that the partner/investor taxes are actually incurred by the partnership pipeline entity, nor do they make any finding as to whether they are recovered in the DCF-ROE or whether a Tax Allowance would result in a double recovery.

Nevertheless, FERC now claims that *ExxonMobil* affirmed the Commission's determination that "for ratemaking purposes *taxes on partnership income are pipeline-level taxes* properly recovered as part of a pipeline's cost of service through a tax allowance." FERC Brief at 19-20 (emphasis added); *see also id.* at 22 and 26-28. But it is one thing to attribute partner/investor taxes to the regulated pipeline's cost of service so that the pipeline can recover those costs through its rates. It is entirely another to say that partner/investor taxes must be treated as "pipeline-level taxes" for purposes of evaluating whether the taxes are recovered in the DCF-ROE. And nothing in *ExxonMobil*, or the orders there on review, found that such taxes could be recovered twice, once in a Tax Allowance and again in the DCF-ROE.

10

It is arbitrary and capricious, and contrary to the uncontroverted record, for FERC to assert that *ExxonMobil* dictates that the taxes borne by partner/investors must be assumed to be borne by partnership pipelines when assessing the question whether granting such pipelines a Tax Allowance results in a double recovery of tax costs. Who actually bears the tax is determinative of whether the tax is recovered in the DCF-ROE. As FERC itself acknowledged, investors take into account the taxes they will bear on potential investments in order to ensure a sufficient after-investor-tax rate of return. *See* Opinion 511 at P 244 (J.A.0506).

When FERC treats the taxes borne by partner/investors as if they were borne by the pipeline, the agency arbitrarily and erroneously assumes away recovery of such taxes in the DCF-ROE and, concomitantly, the double recovery arising when FERC grants to partnership pipelines a Tax Allowance in addition to a DCF-ROE. In neither the orders on review in *ExxonMobil* nor the orders on review here has FERC even attempted to show that partner/investor taxes are not in fact recovered in a partnership pipeline's ROE. FERC agrees that investor taxes are recovered in the DCF-ROE, and relabeling partner/investor taxes as "pipeline-level taxes" does not change this fact.

Indeed, correcting FERC's erroneous assumption and denying a Tax Allowance to partnership pipelines ensures that partnership and corporate pipelines

11

are treated in parity as *ExxonMobil* sought to accomplish. Initial Shipper Brief at

33-36. In its Tax Allowance Policy Statement and the orders on review in

*ExxonMobil*, FERC asserted that it was necessary to grant a Tax Allowance to

partnership pipelines in order to comply with the requirement in *Hope* that FERC

provide each pipeline with an ROE commensurate with ROEs of other enterprises

of comparable risk. *See ExxonMobil,* 487 F.3d at 952-53. FERC further asserted

that if a Tax Allowance were not awarded to partnership pipelines then they would

be at a competitive disadvantage with corporate pipelines because they would

receive a lower after-tax ROE than corporate pipelines. *Id. ExxonMobil,* agreeing

that *Hope* required that corporate and partnership pipelines of comparable risk

should be treated in parity by giving them equal after-tax ROEs, deferred to

FERC's award of a Tax Allowance to partnership pipelines in order to ensure

parity in the after-tax returns received by partnership and corporate pipelines. *Id.*

However, FERC now concedes (i) partnership and corporate pipelines will receive

equal after-tax ROEs only if corporate pipelines receive a Tax Allowance and

partnership pipelines do not and (ii) awarding a Tax Allowance to partnership

pipelines provides them with a competitive advantage. Opinion 511 at P 239

(J.A.0503). And Shippers have demonstrated that once the factually erroneous

assumption underlying FERC's analysis is corrected, it is clear that parity is

attained only if corporate pipelines are awarded a Tax Allowance and partnership

pipelines are not.  Initial Shippers Brief at 33-36.  *ExxonMobil* cannot reasonably be read to dictate the award of a Tax Allowance where it would undermine the parity between partnership and corporate pipelines that *ExxonMobil* expressly sought to preserve.

      b.    FERC's First Tier Label Does Not Provide A Reasoned Justification For Its Denial Of Double Recovery.

In lieu of providing any justification for assuming away the recovery of partner/investor taxes in the DCF-ROE, FERC relies on the Tax Allowance Policy Statement's description of the tax on partner/investors as a "first tier tax" just like the tax borne by corporate pipelines.  FERC Brief at 26.  On this basis FERC argues that the tax is properly treated as a pipeline-level tax.  *Id.* at 27-28. But "first tier" is just FERC's label to describe the fact that partnership pipeline income is taxed only once and that in this sense the tax on partner/investors, like the tax borne by corporate pipelines, is the first level of tax on that income.  The fact that under this terminology the tax on partner/investors is a "first tier" tax and the tax on shareholder/investors in corporate pipelines is a "second tier" tax provides no basis on which to conclude that the tax on partners/investors is not recovered in the DCF-ROE.  FERC does not argue, let alone demonstrate, that the DCF-ROE recovers only what FERC labels a "second tier" tax.  Where investors actually bear income taxes, regardless of whether FERC labels the tax "first tier"

13

or "second tier," the taxes are recovered in the DCF-ROE.  FERC provides no explanation or evidence to the contrary.

          c.     The Double Recovery Of Partner/Investor Taxes Is Not Mandated By Statute.

FERC does not dispute Shippers' argument (Initial Shipper Brief at 48-52) that in providing MLP pipelines with a tax advantage over corporate pipelines, Congress expressed no intent that FERC permit partnership pipelines to double recover their partner/investor tax costs.  Instead, FERC simply reiterates the claim that there is no double recovery.  FERC Brief at 29.

FERC claims that awarding a Tax Allowance to partnership pipelines bestows no additional advantage on them beyond the tax advantage provided in the Internal Revenue Code.  *Id.* at 29-30.  But the tax advantage provided by Congress only decreases partnership pipeline expenses; it does not authorize FERC to include partner/investor taxes in the cost of service twice.  This double recovery is solely the result of FERC's insistence that, contrary to fact, taxes borne by partners/investors must be treated as pipeline-level taxes, and has nothing to do with Congress or the Internal Revenue Code.

Congress gave partnership pipelines a tax advantage, and denying a Tax Allowance does not disturb this advantage.  Denial of a Tax Allowance serves only to ensure that partnership pipelines do not overrecover their actual costs

through the double recovery of partner/investor taxes and are treated in parity with corporate pipelines.

> d.  SFPP's Own Witness Illustrated The Double Recovery, And Neither SFPP Nor FERC Has Demonstrated Anything To The Contrary.

SFPP now embraces FERC's claim that SFPP's witness, Dr. Schink, committed a "methodological error" in his Exhibits that FERC appended to Opinion 511 and touted as refuting Shippers' double recovery argument.[6]  SFPP Brief at 17.  SFPP echoes FERC's related arguments that Dr. Schink's Exhibits had to be corrected to eliminate an alleged improper gross-up of the DCF-ROE.  *Id.* at 16-19; *see also* FERC Brief at 28-29.

SFPP's efforts to disown its own witness's testimony underscores the absence of record support for FERC's denial of the double recovery.  As Shippers explained, Dr. Schink's Exhibits vividly illustrate the double recovery resulting from awarding partnership pipelines a Tax Allowance.  Initial Shippers Brief at 36-

---

[6] SFPP also attempts to discredit ExxonMobil's witness, Dr. Horst. SFPP Brief at 10-12.  SFPP takes issue with Dr. Horst's testimony that sought to empirically illustrate the fact that taxes paid by investors are recovered in the DCF-ROE and that this double recovery could be avoided by reducing SFPP's DCF-ROE.  Once FERC acknowledged that investor taxes are recovered in the DCF-ROE in Opinion 511, P 244 (J.A.0506), there was no longer a need to rely on Dr. Horst's empirical evidence to illustrate this double recovery and to design a mechanism to eliminate it from SFPP's ROE.  In Shippers' view, the double recovery should be eliminated by following Dr. Horst's primary recommendation that FERC should deny SFPP a Tax Allowance.  Tr. 2503:7 to 2506:6 (Horst), R.1047 (J.A.0984-87).

15

41.  The Schink Exhibits similarly illustrate that denying a Tax Allowance would still allow the pipeline to recover its full cost of service, including its allowed DCF-ROE.  *Id.*

As explained, the claimed methodological error is nothing but a restatement of FERC's factually erroneous assumption that partner/investor taxes are pipeline-level taxes.  Initial Shipper Brief at 41-48.  By declaring, contrary to fact, that the partner/investor taxes are pipeline-level taxes, FERC concludes that Dr. Schink should not have reflected recovery of such taxes in his Exhibits in the DCF-ROE by allegedly "grossing-up" the DCF-ROE for pipeline-level taxes.[7]  This leads FERC in Opinion 511-A to back out the allegedly erroneous gross up in the DCF-ROE of "pipeline level" taxes.[8]  As shown, Dr. Schink's DCF-ROE properly reflected recovery of investor-level taxes for both corporate and partnership pipelines.  FERC's erroneous "correction" simply reflects the effect of its false assumption that partner/investor taxes are pipeline-level taxes that are not recovered in the DCF-ROE.

---

[7] *SFPP, L.P.*, Opinion 511-A, 137 FERC ¶ 61,220 at P 327 (2011) ("Opinion 511-A"), R.1014 (J.A.0888)

[8] *Id.* at Appendix D (J.A.0939-41).

B.     FERC's Effort To Insulate Its Orders From Review On Procedural Grounds Should Be Rejected.

FERC seeks to escape the lack of factual and reasoned support for its orders on review by arguing that Shippers' double recovery argument is a collateral attack on *ExxonMobil* and the orders there on review.  FERC Brief at 22-23; *see also* SFPP Brief at 6-10.   FERC argues that these prior decisions determined that taxes borne by partner/investors are pipeline-level taxes that are properly recovered in a Tax Allowance.   On this basis, FERC asserts that the Shippers' challenge to FERC's award of a Tax Allowance in the orders on review is untimely and the Court has no jurisdiction to hear them in this case.   SFPP makes a similar argument but couches it in terms of collateral estoppel, or issue preclusion.   SFPP Brief at 6-10.   These arguments should be rejected.   Neither collateral attack nor collateral estoppel principles bar review of the orders on review.

1.     The Double Recovery Issue Raised Here Is Different From The Issue Resolved In *ExxonMobil* And In The FERC Orders There On Review.

The principles of collateral attack and collateral estoppel only apply where the same issue is actually litigated and resolved in a prior case.  *Southern Co. Servs., Inc. v. FERC*, 416 F.3d 39, 44-45 (D.C. Cir. 2005); *Jack Faucett Assoc., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984); *Second Taxing Dist. of the City of Norwalk v. FERC*, 683 F.2d 477, 484 (D.C. Cir. 1982).

17

The issue presented here was not addressed or resolved in *ExxonMobil* or in the orders there on review, and, therefore, collateral estoppel and collateral attack arguments are inapplicable.

As explained above and in the Initial Shipper Brief, at 10-14, the issue presented and resolved in *ExxonMobil* was whether the income tax costs borne by partner/investors are eligible for recovery in a partnership pipeline's cost of service. *ExxonMobil* affirmed FERC's view that these taxes were attributable to the partnership pipeline's activities and, therefore, reasonably recovered in the pipeline's cost of service. In contrast, the present case presents the issue whether the partner/investor tax costs may be recovered in the cost of service twice: once in a Tax Allowance and again in the DCF-ROE. Accordingly, the issue presented here is different than the issue resolved in *ExxonMobil* and, therefore, the principles of collateral attack and collateral estoppel do not apply.

FERC should be estopped from now arguing that the double recovery issue was decided in *ExxonMobil* and may not now be raised here. A court may invoke judicial estoppel against a party having successfully taken a position in one proceeding from taking a contrary position in another case simply because its interests have changed. *See Moses v. Howard Univ. Hosp.,* 606 F.3d 789, 798 (D.C. Cir. 2010). In their Initial Brief in *ExxonMobil*, the shippers-petitioners argued *BP West* had properly denied a Tax Allowance because partnerships bear

18

no income tax liability.[9]   In the alternative, shippers argued that partner/investor taxes were already recovered in the DCF-ROE and that granting a Tax Allowance on top of the ROE would be duplicative.[10]   FERC responded that the issue of whether partnership pipelines should be granted a Tax Allowance in addition to the "embedded" tax allowance in the DCF-ROE was not properly before the Court. FERC argued that it was a "technical argument," which remained to be addressed in the "compliance phase" of the case.[11]   Having represented to the *ExxonMobil* Court that the issue as to whether recovery of income tax costs were already embedded in the DCF-ROE was not properly before it, FERC cannot now be heard to argue that *ExxonMobil* resolved the issue.

The double recovery issue in fact was addressed in the compliance proceedings without any claim by FERC that the matter was resolved in *ExxonMobil*.[12]   FERC there rejected the double recovery argument,[13] and certain

---

[9] Joint Initial Brief of Shipper Petitioners, Case Nos. 04-1102 *et al*., dated October 19, 2006 (Final Brief) at 16-18.  The relevant excerpts are appended as Attachment A hereto.

[10] *Id.* at 22-23.

[11] Brief of Respondents Federal Energy Regulatory Commission and United States of America, Case Nos. 04-1102 *et al*., dated October 19, 2006 (Final Brief) at 30-31.  The relevant excerpt is appended as Attachment B hereto.

[12] *SFPP, L.P.,* 121 FERC ¶ 61,240 at PP 52-53 (2007).

[13] *Id.*

shippers sought rehearing.[14]    The compliance proceedings were subsequently settled in a sweeping omnibus settlement of numerous dockets that did not resolve any pending issue on the merits or adopt or create any precedent or principle.[15] The decisions on review here were issued in a docket (FERC Docket No. IS08-390) excluded from the settlement[16] and, therefore, this case is an appropriate and timely proceeding in which to bring the double recovery issue to the Court.

        2.     Collateral Estoppel Is Inapplicable Even If The Double Recovery Issue Had Been Resolved In *ExxonMobil*.

SFPP's reliance on collateral estoppel is merely the *post hoc* rationalization of counsel.  *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168-69 (1962).  The orders on review do not rely on this doctrine, but as detailed in the next section, addressed the merits of Shippers' arguments.  Thus, the orders on review cannot be upheld on a basis not relied on by FERC.

Further, collateral estoppel cannot apply here because not all of the Shippers were parties to the cases on appeal in *ExxonMobil* or participants in the Tax Allowance Policy Statement proceeding.  *See Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008).  Specifically, Tesoro − a petitioner here − was not a party in either

---

[14] *See SFPP, L.P.,* 122 FERC ¶ 61,133 at P 1 (2008) (tolling shippers' requests for rehearing on the Tax Allowance issue).

[15] *SFPP, L.P.,* 131 FERC ¶ 61,180 (2010); *see also SFPP, L.P.,* 134 FERC ¶ 61,201 (2011).

[16] 131 FERC ¶ 61,180 at P 3; 134 FERC ¶ 61,201 at P 3.

the FERC proceedings on review in *ExxonMobil* or in the Tax Allowance Policy Statement proceeding, and cannot be barred by collateral estoppel to address the double recovery issue here. Further, while SFPP and FERC note that an airline trade association filed comments in the Tax Allowance Policy Statement proceeding. These comments cannot be the basis of a finding of issue preclusion against the individual airline companies that are petitioners here. SFPP's terse reliance on collateral estoppel failed to meet its burden to show that the actions of the trade association justify an exception to the rule against nonparty preclusion. *Id.* at 892-95 and 907.

> 3.     FERC Cannot Evade Review Because It Reopened Its Policy In The Orders On Review.

FERC cannot invoke the principle of collateral attack or collateral estoppel to insulate its orders from review because it did not base its decision below on those principles but rather re-opened its Tax Allowance policy for reconsideration.[17] FERC held an evidentiary hearing in which the parties fully explored the merits of Shippers' double recovery argument through expert

---

[17] While FERC asserted that Shippers' double recovery arguments were a collateral attack on its Tax Allowance Policy Statement, *see* Opinion 511 at P 241 (J.A.0504), it made no reference to the doctrine of collateral estoppel, and in any event proceeded to undertake a detailed reconsideration of its policy.

21

testimony and cross-examination of opposing witnesses.[18]   Shippers presented evidence that granting a Tax Allowance in addition to the DCF-ROE results in a double recovery of partner/investor income taxes, which evidence was not considered by FERC in its Tax Allowance Policy Statement, by the orders on review in *ExxonMobil*, or by the *ExxonMobil* Court.   The essence of Shippers' evidentiary showing is that FERC's actions are inconsistent with the ICA because they result in duplicative recovery of partner/investor tax costs and, therefore, unjust and unreasonable rates.

A party may challenge an existing rule or precedent on grounds of new circumstances or evidence, or based on a claim that the precedent or rule is contrary to statute.  *See, e.g., Indep. Cmty Bankers of Am. v. Bd. of Governors of the Fed. Reserve Sys.*, 195 F.3d 28, 34-35 (D.C. Cir. 1999) (a challenge to a rule is not an untimely collateral attack where it is based on a lack of statutory authority); *Bechtel v. FCC*, 957 F.2d 873, 881 (D.C. Cir. 1992) (changes in facts or circumstances "may impose upon the agency an obligation to reconsider settled policy or explain its failure to do so"); *Second Taxing Dist.*, 683 F.2d at 484. FERC cannot evade review of its orders on grounds of collateral attack or collateral estoppel where, as here, Shippers' challenges are based on new evidence

---

[18] *See, generally,* Opinion 511 at PP 2-5 (J.A.0392-93); Opinion 511-A at PP 3-5 (J.A.0729-30).

demonstrating that FERC's policy for partnership pipelines results in unjust and unreasonable rates prohibited by the ICA.

Further, in the orders on review FERC plainly re-opened and reconsidered its policy. Where an agency re-opens and reconsiders an existing rule, precedent or policy its decision is not insulated from review on the basis of collateral attack or collateral estoppel. *Second Taxing Dist.*, 683 F.2d at 484; *CTIA-The Wireless Ass'n v. FCC,* 466 F.3d 105, 110 (D.C. Cir. 2006) ("*CTIA*"); *Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 141 (D.C. Cir. 1998); *FTC v. Texaco, Inc.*, 555 F.2d 862, 932-35 (D.C. Cir. 1977); *see also ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987). This is true even when the agency decides to reaffirm and preserve its rule, precedent or policy. *ICC v. Brotherhood of Locomotive Eng'rs,* 482 U.S. at 278; *CTIA*, 466 F.3d at 110.

Whether an agency has re-opened and reconsidered a rule or policy is adjudged by whether it has provided an "opportunity for renewed comment and objection," *Edison Elec. Inst. v. EPA*, 996 F.2d 326, 331 (D.C. Cir. 1993) (quoting *Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988)), and in the context of the entire agency action. *CTIA,* 466 F.3d at 110. In general, the key is whether the agency "'ha[s] undertaken a serious substantive reconsideration of the [existing] rule." *P&V Enter. v. U.S. Army Corps of Eng'rs,* 516 F.3d 1021, 1023-24 (D.C.

23

Cir. 2008) (quoting *Nat'l Mining Ass'n v. U.S. Dep't of the Interior*, 70 F.3d 1345, 1352 (D.C. Cir. 1995)).   Where an agency sets forth new justifications for its policy, this is strong evidence that it has re-opened the policy.   *CTIA*, 466 F.3d. at 112; *Bluewater Network v. EPA*, 370 F.3d 1, 16-17 (D.C. Cir. 2004) (the agency puts its existing rule "in play" by putting forward new evidence and justifications for its existing rule).

        In the orders on review, FERC plainly reconsidered, in detail, the legality of the Tax Allowance Policy Statement.   Opinion 511 at PP 218-65 (J.A.0491-517); Opinion 511-A at PP 266-353 (J.A.0840-904).   As FERC stated in Opinion 511 (at P 220), "[a]ll arguments regarding the fundamental legality of the income tax allowance for master limited partnership (MLP) are addressed here," and (at P 262) "the Commission will revisit the policy rationale that underlies the [Tax Allowance] Policy Statement" (J.A.0492, 0516).   Also, FERC's analysis included matters beyond those set forth in the Tax Allowance Policy Statement and the orders on review in *ExxonMobil,* including whether partner income taxes are recovered in the DCF-ROE (*id.* at PP 241-44), an expansion of the example set forth in the Tax Allowance Policy Statement (*id.* at P 245), the Schink Exhibits (*id.* at PP 246-49), the conclusion that the double recovery argument is "mathematically incorrect" (*id.* at P 250), and a "revisited" review of the legislative history of the relevant Internal Revenue Code provision to support the

24

assertion that Congress "intended" that FERC grant a Tax Allowance to partnership pipelines (*id.* at PP 253-58) (J.A.0504-06, 0506-07, 0507-08, 0509, and 0511-14). And, as explained above, FERC has now jettisoned the rationale set forth in *ExxonMobil* that a Tax Allowance for partnership pipelines is necessary for parity with corporate pipelines. *See ExxonMobil*, 487 F.3d at 952-53. Now FERC claims that awarding a Tax Allowance to partnership pipelines provides partnership pipelines with a competitive advantage. Opinion 511 at P 239 (J.A.0503-04).

Similarly, FERC acknowledged that it addressed "in detail" the regulatory, accounting, financial, and mathematical issues raised by Shippers in support of their double recovery argument. Opinion 511-A at P 279 (J.A.0848). And this analysis included a new series of "commission-drafted" tables and modifications to the Schink Exhibits that purportedly support FERC's conclusion that Shippers' double recovery argument is "mathematically incorrect." *Id.* at PP 280 and 321 (J.A.0848-49 and 0883).

Having fully analyzed Shippers' evidentiary presentation and arguments regarding the operation of the DCF method and double recovery of tax costs borne by partner/investors, and having "revisited" and put forward a complete substantive response and new justifications for its policy, FERC cannot insulate its decision from judicial review. While the orders reaffirmed FERC's

policy, the reasoning underlying the Commission's reaffirmation of its policy is subject to review.

III.    CONCLUSION

For the foregoing reasons, Shippers hereby request that the Court reverse the Commission's orders on review to the extent they approve SFPP's inclusion of a Tax Allowance in its rates.

Respectfully submitted,

/s/ Richard E. Powers, Jr.
Richard E. Powers, Jr.
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
202-344-4360

Counsel for United Airlines, Inc.,
Delta Air Lines, Inc., Southwest
Airlines Co., and American
Airlines, Inc.

/s/ Steven A. Adducci
Steven A. Adducci
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
202-344-4361

Counsel for Chevron Products
Company and Valero Marketing
and Supply Company

/s/ Thomas J. Eastment
Thomas J. Eastment
Gregory S. Wagner
Baker Botts L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2400
202-639-7700

Counsel for ExxonMobil Oil Corporation
and BP West Coast Products LLC

/s/ Melvin Goldstein
Melvin Goldstein
Goldstein & Associates, P.C.
1757 P Street, N.W.
Washington, D.C.  20036
202-872-8740

Counsel for Tesoro Refining and
Marketing Company LLC

Dated:  January 15, 2016
          February 5, 2016 (Final Brief)

27

# ATTACHMENT A

### Relevant Excerpt Of

### Joint Initial Brief of Shipper Petitioners,

### Case Nos. 04-1102 *et al.*,

### dated October 19, 2006 (Final Brief) at 16-18 and 22-23

COMPLEX

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 04-1102 *et al.*
(Consolidated)

EXXONMOBIL OIL CORPORATION, *et al.*

*Petitioners,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

ON PETITIONS FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION

JOINT INITIAL BRIEF OF SHIPPER PETITIONERS

Thomas J. Eastment
Joshua B. Frank
Baker Botts L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 639-7717

Counsel for Navajo Refining Company, L.P.

R. Gordon Gooch
Travis & Gooch
851 North Glebe Road, Suite 911
P.O. Box 3259
Arlington, VA 22203-9998
(703) 351-7520

Elisabeth R. Myers
Blackwell Sanders Peper Martin LLP
750 17th Street, N.W., Suite 1000
Washington, DC 20006
(202) 654-4500

Counsel for BP West Coast Products LLC
and ExxonMobil Oil Corporation

Dated: May 30, 2006
        October 19, 2006(Final Brief)

Additional Counsel Listed on Separate Page

DC01:457211.1

income tax allowance under the Policy Statement is reflected in its use of a full income tax allowance in its computation of costs used in its substantially changed circumstances analysis, which is discussed in the next section of this Brief.[19]

In support of the Policy Statement, FERC asserted that an income tax allowance is appropriate because, while the pass-through limited partnership pipeline pays no income taxes, the owners of the pipeline do so.[20] FERC thereby rejected the *BP West* Court's conclusion that because a limited partnership is a pass-through entity that pays no income taxes, granting an allowance to a limited partnership pipeline "results in a phantom tax on fictional public utility income."[21] FERC justified its disregard of *BP West* by asserting that "a detailed discussion of the realities of partnership tax practice" was not before the *BP Court*.[22] Specifically, FERC asserted that such realities are that public utility income of pass-through entities is attributed to the owners and that such owners have an actual or potential income tax liability on that income.[23]

     **b.** **FERC's decision to award a full income tax allowance to SFPP disregards each key element of the *BP West* Court's reasoning.**

       **i.** **FERC ignores the *BP West* Court's conclusion that a regulated entity is not entitled to an income tax allowance where it bears no income tax burden.**

As *BP West* noted, SFPP is a limited partnership that incurs no income tax liability. 374 F.3d at 1286. The Court concluded that where there is no income tax on the

---

Statement at 61,743, n.34 (J.A.02802). Thus, in the subsequent procedures FERC would determine the percentage of owners, if any, that fall within this narrow exception and its impact on the resulting composite tax rate to be employed in the income tax allowance computation. *Id.* at 61,741-42, P 32 (J.A.02800-801).

[19] June 2005 Order at 62,456-57, P 30, 62,459, PP 39-40, and n.58 (J.A.02643-44, 02646).

[20] *Id.* at 62,455-56, PP 21-27 (J.A.02642-43).

[21] Policy Statement at 61,742, P 33 (J.A.02801); June 2005 Order at 62,455, P 22 (J.A.02642).

[22] Policy Statement at 61,742, P 34 (J.A.02801); June 2005 Order at 62,455, P 24 (J.A.02642).

[23] *Id.*

regulated entity, "the regulator cannot create a phantom tax in order to create an allowance to pass through to the rate payer." *Id.* at 1291. Accordingly, the *BP West* Court concluded that FERC could not approve "an allowance for fictitious taxes" that are "not incurred and not paid by the regulated entity." *Id.* at 1293.

Nothing in the Policy Statement or in the orders on review dispute the simple fact that SFPP, as a limited partnership, incurs and pays no income taxes. Under the plain directive of *BP West*, SFPP is not entitled to an allowance for "phantom" or "fictitious" taxes. FERC erred by ignoring the Court's clear and unequivocal findings.

   ii. **FERC ignores the *BP West* Court's central findings that distinguish between taxes borne by the regulated entity and those borne by investors in the regulated entity.**

A central element of the *BP West* Court's reasoning is that a regulated entity and its investors are separate and distinct. The Court observed that the distinction is of critical importance, as the costs of the regulated entity are includable in its cost-of-service while the costs of the investors are not. *Id.* at 1290-91. Investors' expenses, including their income tax expenses, are not rationally placed in the regulated entity's cost-of-service. Even FERC does not take the position that the income tax expenses attributable to dividends received by shareholders in a regulated corporation should be included in the regulated entity's cost-of-service. The same result should apply to the income tax expense of unitholders in a regulated limited partnership. As the *BP West* Court noted, it would make no sense to include in a pipeline's cost-of-service the investors' cost of bookkeeping or other expenses attributable to their ownership in the pipeline. "It makes equal sense" to exclude investors' tax liabilities from the pipeline's cost-of-service. *Id.* at 1291.

FERC's central justification for ignoring *BP West* is the claim that the Court did not have before it, and therefore did not take into account, relevant principles of partnership tax

law.[24]  Specifically, FERC noted that an income tax allowance is appropriate because while the pass-through entity pays no income taxes, the owners of the pipeline do.[25]

Contrary to FERC's claim, the *BP West* Court fully appreciated that the partners (unitholders) of a regulated limited partnership are subject to tax on their share of the partnership's income.  In vacating FERC's *Lakehead* policy, the *BP West* Court noted that both corporate and individual unitholders were subject to tax on the income attributed to their interests in the partnership.[26]  Notwithstanding the Court's full appreciation of the pass-through nature of limited partnerships and the fact that both individuals and Subchapter C corporations owning partnership interests are subject to tax on their respective shares of partnership income, *BP West* concluded that an income tax allowance should not be provided with respect to any limited partnership income.  374 F.3d at 1291.

Accordingly, FERC's rationale in the Policy Statement and the orders on review is specifically rejected by *BP West* in drawing its critical distinction between the income tax liabilities of the regulated entity and the tax liabilities of investors in that entity.  FERC's conclusions directly flout the *BP West* Court's directive that the taxes borne by the unitholders of a limited partnership such as SFPP are not entitled to an income tax allowance simply because the investors (unitholders) are subject to tax on their share of the partnership's income.  *Id.* at 1290-91.

---

[24] Policy Statement at 61,742 P.34 (J.A.02801); June 2005 Order at 62,455, P 24 (J.A.02642).

[25] Policy Statement at 61,742, P.33 (J.A. 02801); June 2005 Order at 62,455, P 23 (J.A.02642).

[26] *BP West*, 374 F.3d at 1288-89 (citing *Lakehead* for the proposition that when partnership interests are held by corporations, the income attributable to the interest is taxed at the corporate rate); *id.* at 1289 (noting that individuals owning limited partnership interests are subject to individual income taxes on their share of the partnership income).

iv.  **FERC's approval of a full income tax allowance for SFPP is inconsistent with well-established principles regarding the determination of a just and reasonable return.**

FERC asserts that providing an income tax allowance to limited partnership pipelines will facilitate important public utility investments.[31] As the *BP West* Court noted, it is not a valid justification to give an allowance for non-existent tax liability simply on grounds that higher costs of service and rates would attract more investors. Such an argument "would equally apply to any decision by the Commission that caused the pipeline lower allowances rather than higher." 374 F.3d at 1292. No disincentive to investment can reasonably arise from a denial of an allowance for "fictitious taxes" or any other non-existent cost. *See id.* at 1293.

The interrelationship of FERC's allowed return and an income tax allowance is of central importance to the question of investor incentives. FERC sets a pipeline's return on equity at the level it finds is needed to attract investors.[32] This is set at the level FERC determines is the return that an investor could obtain from investments having commensurate risks.[33] As the *BP West* court observed, an investor in an unregulated company would fully expect to bear the income taxes due on income received from the investment.[34] This is no less true of investors in regulated enterprises.[35] This is reflected in FERC's methodology for setting a pipeline's rate of return on equity. FERC undertakes a discounted cash flow ("DCF") analysis that looks to the

---

[31] *Id.*

[32] *BP West,* 374 F.3d at 1286, 1290; *FPC v. Hope Natural Gas*, 320 U.S. 591, 603 (1943).

[33] *Id.*

[34] *BP West* at 1290.

[35] *Id.* at 1290-91.

yield an investor could be expected to receive on an investment of commensurate risk prior to any taxes for which the investor may be liable.[36]

FERC's new income tax policy, and its application in this case to give SFPP a full income tax allowance, cannot be reconciled with its return on equity methodology. FERC's new policy provides investors in a partnership pipeline with a return net of the investors' taxes, despite the fact that the rate of return is determined through the DCF analysis based on the return (or yield), *before investors' taxes*, deemed necessary to attract investment.

Accordingly, FERC's decision to award SFPP an income tax allowance is arbitrary and capricious because it bestows on the pipeline a level of return far in excess of FERC's own allowed rate of return computations.

### 4. Even if FERC's Policy Statement Were Lawful, the Law of the Case Doctrine Forecloses Approval of an Income Tax Allowance on Income Attributable to Owners other than Subchapter C Corporations for the Period at Issue in *BP West*.

Even if the Court were to conclude that FERC lawfully awarded SFPP a full income tax allowance, this policy cannot be retroactively applied to the period at issue in the OR92-8 proceeding that was addressed in *BP West*.

In the orders remanded in *BP West*, FERC had provided SFPP with an income tax allowance for the income attributable to its Subchapter C corporation unitholders. Shippers and SFPP cross-appealed. *BP West* at 1285. SFPP argued that it should receive a full income tax allowance including income attributable to individuals and other non-corporate unitholders. FERC rejected SFPP's argument that it is entitled to an income tax allowance on income

---

[36] *Town of Norwood v. FERC*, 80 F.3d 526, 533 (D.C. Cir. 1987) (the DCF analysis used to determine a rate of return on equity is founded on the current dividend yield plus the anticipated dividend growth that would be earned by a potential buyer of a regulated company's stock); *Public Service Comm'n of New York v. FERC*, 813 F.2d 448, 463 (D.C. Cir. 1987); *Northwest Pipeline Co.,*, 81 F.E.R.C. ¶ 61,036 at 61,188-89 at n.7 (1997).

ATTACHMENT B

Relevant Excerpts Of

Brief of Respondents

Federal Energy Regulatory Commission and United States of America,

Case Nos. 04-1102 *et al.*, dated October 19, 2006 (Final Brief) at 30-31

COMPLEX

ORAL ARGUMENT HAS NOT BEEN SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 04-1102, *et al.*
(Consolidated)

EXXONMOBIL OIL CORPORATION, *et al.*,
PETITIONERS,

v.

FEDERAL ENERGY REGULATORY COMMISSION, *et al.*,
RESPONDENTS.

ON PETITIONS FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION

BRIEF OF RESPONDENTS
FEDERAL ENERGY REGULATORY COMMISSION
AND UNITED STATES OF AMERICA

R. Hewitt Pate
Assistant Attorney General

John J. Powers, III
Robert J. Wiggers
Attorneys

For Respondent
United States of America
U.S. Department of Justice
Washington, D.C. 20530

October 19, 2006

John S. Moot
General Counsel

Robert H. Solomon
Solicitor

Lona T. Perry
Senior Attorney

John M. Robinson
Attorney

For Respondent
Federal Energy
Regulatory Commission
Washington, D.C. 20426

allowance, the result is the same because the maximum personal income tax allowance, like the corporate allowance, is 35 percent, and the partners would have an after-tax return of $100. *Id.* P 26, JA 2799. However, if no income tax allowance is permitted, then the partners must pay a $35 income tax on $100 of utility income, leaving them with only an after-tax return of $65. *Id.* Thus, partnerships must be granted an income tax allowance to make the partnership and corporate business forms equally attractive. *Id.*

In another example, assuming that a return of 12 percent is required to attract capital, a corporate tax allowance would increase the regulated entity's pre-tax return to 18.5 percent, which, after application of the 35 percent tax rate, results in a 12 percent equity return. *Id.* P 14, JA 2797. In contrast, in the absence of a tax allowance, the regulated entity subject to the 35 percent tax would only pay out dividends of 7.8 percent of net income (instead of 12 percent) which is insufficient to attract equity investment. *Id.* PP 13-14, JA 2797.

Finally, Shippers argue that SFPP should not be afforded an income tax allowance because the partnership's allowed equity return, as determined through the Commission's discounted cash flow methodology, already has a tax allowance embedded in it. Shipper Br. 22-23. This technical argument addresses the relationship between the allowed regulatory return of the partnership, any tax

30

allowance, and the possible increase in the actual return a partner may receive from the income and loss allocation provisions of a specific partnership. This point is before the Commission in the compliance phase commenced by the December 2005 Compliance Order and will be addressed there, along with the other criticisms of the more technical issues addressed by the December 2005 Compliance Order, 113 FERC ¶ 61,277.

### E.    Application of the Policy Statement to SFPP Is Not Precluded By *BP West Coast.*

In an effort to avoid application of the Policy Statement, Shippers raise several arguments contending that *BP West Coast* precludes the granting of an income tax allowance in this case. None of these arguments has merit.

In the first instance, Shippers contend that *BP West Coast* precludes the award of any tax allowance to SFPP. Shipper Br. 16-18. However, nothing in the Court's mandate required the Commission to reach a particular result on the tax allowance issue. *See Charlottesville*, 774 F.2d at 1212-13. Rather, the Court vacated and remanded the issue of the income tax allowance based upon the absence of a supportable rationale in the Commission's *Lakehead* order or in the orders on review. *See BP West Coast*, 374 F.3d at 1285 ("Because FERC has not established that its 42.7% income tax allowance is the product of reasoned decisionmaking and indeed has provided no rational basis for this part of its order,

31

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the 6,000 word limit set by the Court because it contains 5,923 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(2).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(a)(1) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word and 14 point Times New Roman.

*/s/ Thomas J. Eastment*
Thomas J. Eastment

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that I have this 5th day of February, 2016, served a copy of the foregoing document electronically through the Court's CM/ECF system on all registered counsel.

*/s/ Thomas J. Eastment*
Thomas J. Eastment

FEDERAL ENERGY REGULATORY
COMMISSION

Robert H. Solomon, Solicitor
Office of the Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC  20426
robert.solomon@ferc.gov

Elizabeth Evans Rylander, Attorney
Office of the Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC  20426
elizabeth.rylander@ferc.gov

Lisa Barbas Luftig, Attorney
Office of General Counsel
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC  20426
lisa.luftig@ferc.gov

UNITED STATES OF AMERICA

Robert J. Wiggers
U.S. Department of Justice
Antitrust Division, Appellate Section
950 Pennsylvania Avenue, NW
Room 3224
Washington, D.C.  20530-0001
robert.wiggers@usdoj.gov

James Joseph Fredricks
U.S. Department of Justice
Antitrust Division, Appellate Section
950 Pennsylvania Avenue, NW
Room 3224
Washington, D.C.  20530-0001
james.fredricks@usdoj.gov

SFPP, L.P.

Charles F. Caldwell
Caldwell Boudreaux Lefler PLLC
1800 West Loop South, Suite 1680
Houston, TX  77027
ccaldwell@cblpipelinelaw.com

Elizabeth Barnidge Kohlhausen
Caldwell Boudreaux Lefler PLLC
1800 West Loop South, Suite 1680
Houston, TX  77027
ekohlhausen@cblpipelinelaw.com

Dean Hyrum Lefler
Caldwell Boudreaux Lefler PLLC
1800 West Loop South, Suite 1680
Houston, TX  77027
dlefler@cblpipelinelaw.com

CHEVRON PRODUCTS COMPANY

Steven A. Adducci
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
saadducci@venable.com

UNITED AIRLINES, INC.
SOUTHWEST AIRLINES CO.,
AND AMERICAN AIRLINES, INC.

Richard E. Powers, Jr.
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
repowers@venable.com

TESORO REFINING AND MARKETING
COMPANY

Melvin Goldstein
Goldstein & Associates, P.C.
1757 P Street, N.W.
Washington, D.C.  20036
mgoldstein@goldstein-law.com

VALERO MARKETING AND SUPPLY
COMPANY

Steven A. Adducci
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
saadducci@venable.com

PHILLIPS 66 COMPANY,
SUCCESSOR TO CONOCOPHILLIPS
COMPANY

Marcus W. Sisk
Frederick G. Jauss
Dorsey & Whitney LLP
1801 K Street, NW
Washington, DC  20006
sisk.marcus@dorsey.com
jauss.fred@dorsey.com