**ORAL ARGUMENT SCHEDULED FOR MARCH 22, 2016**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____
**Nos. 11-1479, 12-1069, 12-1070, 12-1073,
12-1086, 15-1101, 15-1105, 15-1107
(Consolidated)**
_____

**UNITED AIRLINES, INC., *ET. AL.*,**

**Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION AND
UNITED STATES OF AMERICA,**

**Respondents.**
_____

**ON PETITION FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION**
_____

**REPLY BRIEF OF PETITIONER SFPP, L.P.**
_____

Daniel W. Sanborn                  Charles F. Caldwell
Assistant General Counsel          Dean H. Lefler
Kinder Morgan, Inc.                Caldwell Boudreaux Lefler PLLC
1001 Louisiana St., Suite 1000     1800 West Loop South, Suite 1680
Houston, TX  77002                 Houston, TX  77027
(713) 420-6024                     (713) 357-6228


**ATTORNEYS FOR SFPP, L.P.**


January 15, 2016
February 5, 2016 (Final)
March 4, 2016 (Final with errata)

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES .......................................................................iii

GLOSSARY OF ABBREVIATIONS .........................................................v

I.    SUMMARY OF ARGUMENT ........................................................1

II.   ARGUMENT.....................................................................................4

      A.   FERC's Adoption of the September 2008 Real ROE Was
           Arbitrary and Capricious and Not the Result of Reasoned
           Decision-Making ..........................................................................4

           1.   FERC's adoption of the September 2008 real ROE is not
                  supported by substantial evidence ................................5

           2.   FERC's decision to use a 7.69-percent real ROE does not
                  enjoy a presumption of reasonableness............................8

           3.   No evidence in the record supports the use of the 7.69-
                  percent real ROE for September 2008.........................9

           4.   FERC's comparison of the September 2008 real ROE to
                  real ROEs for other periods does not demonstrate that it
                  was representative of SFPP's cost of capital......................11

           5.   Respondents' criticism of SFPP's proposal to adjust the
                  nominal ROE for September 2008 and adjust it for
                  reasonable inflation is without merit................................13

      B.   SFPP Is Entitled to Full Application of the 2009 Index, and
           Respondents' and Shippers' Contrary Claims Reflect a
           Misinterpretation of FERC's Indexing Methodology..........................14

           1.   The 2009 index is not intended to recover inflationary
                  costs incurred in 2008 ....................................................15

            2.   The fact that a rate index adjustment is based on
                  historical data does not mean that the purpose of the rate
                  index adjustment is to recover historical
                  costs........................................................................20

3.   The 2006 and 2007 Orders cited by Respondents and Shippers actually supports SFPP's position that it should be entitled to full application of the 2009 index .................................................................................. 23

III.   CONCLUSION ................................................................................ 26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ANR Pipeline Co. v. FERC*,
   771 F.2d 507 (D.C. Cir. 1985)..................................................................14

*Association of Oil Pipe Lines v. FERC*,
   83 F.3d 1424 (D.C. Cir. 1996)..................................................................16

*Exxon Co., U.S.A. v. FERC*,
   182 F.3d 30 (D.C. Cir. 1999).....................................................................8

*Concord v. FERC*,
   955 F.2d 67 (D.C. Cir. 1992)....................................................................19

*Flying J Inc. v. FERC*,
   363 F.3d 495 (D.C. Cir. 2004)..................................................................17

*Frontier Pipeline Co. v. FERC*,
   452 F.3d 774 (D.C. Cir. 2006)..................................................................16

## ADMINISTRATIVE CASES

*BP West Coast Products LLC v. SFPP, L.P.*,
   121 FERC ¶ 61,141 (2007)........................................................................17

*Five-Year Review of Oil Pipeline Pricing Index*,
   93 FERC ¶ 61,266 (2000)....................................................................16, 21

*Revisions to Oil Pipeline Regulations Pursuant to the Energy Policy Act of 1992*,
   FERC Stats. & Regs. [Regs. Preambles, 1991-1996]
   ¶ 30,985 (1993) ("Order 561") .......................................................16, 17, 20

*Revisions to Oil Pipeline Regulations Pursuant to the Energy Policy Act of 1992*,
   Order 561-A, FERC Stats. & Regs. [Regs Preambles, 1991-1996]
   ¶ 31,000 (1994) ("Order 561-A").......................................................16, 20

**\*Authorities upon which we chiefly rely are marked with asterisks**.

iii

*SFPP, L.P.*,
  91 FERC ¶ 61,135 (2000) ("Opinion 435-A") ...................................................21

**SFPP, L.P.*,
  117 FERC ¶ 61,271 (2006) ("2006 Order") ....................................................23, 24

**SFPP, L.P.*,
  120 FERC ¶ 61,245 (2007) ("2007 Order") .......................................................23

*SFPP, L.P.*,
  129 FERC ¶ 63,020 (2009) ("ID") ..................................................................1, 5, 10

*SFPP, L.P.*,
  134 FERC ¶ 61,121 (2011) ("Opinion 511") ...................................................1, 6, 12

*SFPP, L.P.*,
  FERC ¶ 61,220 (2011) ("Opinion 511-A") ......................................................1, 6, 8

*SFPP, L.P.*,
  150 FERC ¶ 61,096 (2015) ("Opinion 511-B") ...................................................25

*Trunkline Gas Co.*,
  90 FERC ¶ 61,017 (2000) ("*Trunkline*").........................................................8, 9

iv

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ALJ | Administrative Law Judge |
| FERC or Commission | Federal Energy Regulatory Commission |
| ID | Initial Decision |
| PPI-FG | Producer Price Index for Finished Goods |
| Respondents | Federal Energy Regulatory Commission and United States of America |
| ROE | Return on Equity |
| SFPP | SFPP, L.P. |
| Shippers | Petitioners United Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., US Airways, Inc., BP West Coast Products LLC, Chevron Products Company, ExxonMobil Oil Corporation, Valero Marketing and Supply Company, and Tesoro Refining and Marketing Company LLC |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**Nos. 11-1479, 12-1069, 12-1070, 12-1073,
12-1086, 15-1101, 15-1105, 15-1107
(Consolidated)**

_____

## UNITED AIRLINES, INC., *ET. AL.*,

**Petitioners,**

**v.**

## FEDERAL ENERGY REGULATORY COMMISSION AND
## UNITED STATES OF AMERICA,

**Respondents.**

_____

ON PETITION FOR REVIEW OF ORDERS OF
THE FEDERAL ENERGY REGULATORY COMMISSION

_____

**REPLY BRIEF OF PETITIONER SFPP, L.P.**

_____

## I.
## SUMMARY OF ARGUMENT

<u>Return on Equity ("ROE")</u>.  Respondents and Shippers contend that the

Administrative Law Judge ("ALJ") and FERC found the September 2008 real ROE

to be reasonable.  A review of the Initial Decision (*SFPP, L.P.*, 129 FERC ¶

63,020 (2009) ("ID")) and Opinions 511 (*SFPP, L.P.*, 134 FERC ¶ 61,121 (2011))

and 511-A (*SFPP, L.P.*, 137 FERC ¶ 61,220 (2011)), however, reveal that neither

the ALJ nor FERC actually found that the September 2008 real ROE reflects

SFPP, L.P.'s ("SFPP") cost of capital or, more importantly, cited evidence that that is the case.

SFPP explained in its initial brief that the September 2008 real ROE does not enjoy a presumption of reasonableness. Respondents do not dispute that. Shippers attempt to show that FERC uses either the most recent ROE data in the record or, alternatively, data as of the end of the test period. However, the case Shippers rely on does not support their claims and shows that FERC erred by failing to determine that the September 2008 real ROE best represents SFPP's cost of capital. Not only did FERC not make that determination, but no witness in this case provided testimony that would support such a determination.

Respondents criticize the proposal SFPP made to FERC to develop a real ROE using average inflation. Respondents' criticism—and FERC's rejection—however, implicitly assume that SFPP bore the burden of proof on what ROE should be used. Since FERC departed from its established policy of using the most recent ROE data in the record, FERC bore the burden of demonstrating that substantial evidence exists for its decision to use the September 2008 real ROE. FERC failed to show that, and, as a result, its decision does not reflect reasoned decision-making.

Indexing. Respondents' and Shippers' argument that SFPP is not entitled to apply the full amount of the 2009 index runs counter to the fundamental principles

underlying FERC's indexing methodology. The indexing methodology provides pipelines subject to regulation under the Interstate Commerce Act with a simplified mechanism to adjust their rates to account for future inflationary cost changes. The indexing methodology is not intended to recover past inflationary cost changes. Despite Respondents' and Shippers' assertions to the contrary, the fact that SFPP's 2008 rates are based, in part, on updated cost data through September 2008 is irrelevant to the determination of the appropriate rate index to apply for calculating SFPP's July 1, 2009 to June 30, 2010 rates.

Although the rate index adjustments are calculated using historical cost data, that use does not indicate that indexing is a backward-looking exercise, as Respondents and Shippers suggest. Rather, the historical data is used as a proxy for, or predictor of, cost changes that pipelines are anticipated to experience in the future. While FERC does use historical data to evaluate, as a threshold matter, whether challenges to an index-based rate adjustment should be entertained, that administrative tool should not be confused with, and is unrelated to the purpose of, the index itself, which is adjusting prospective rates for inflationary cost changes expected during the coming year. There is no indication in the record or in FERC's policy or regulations that indexing was or is intended to function as a "true-up" mechanism.

Respondents and Shippers argue that FERC's decision to preclude SFPP from applying 75 percent of the 2009 index is consistent with governing FERC precedent. However, the decisions primarily relied upon by Respondents and Shippers make clear that (1) FERC acted in contravention of its own precedent and (2) FERC failed to conduct the requisite analysis before ruling that SFPP is not entitled to apply the full 2009 index.

## II.
## ARGUMENT

### A.    FERC's Adoption of the September 2008 Real ROE Was Arbitrary and Capricious and Not the Result of Reasoned Decision-Making.

Respondents state that SFPP does not dispute that the nominal ROE for the end of the test period (September 2008) is representative of SFPP's cost of capital. Respondents at 39. That is true. The *nominal* ROE for September 2008 is reasonably representative, as one can see from nominal ROEs for other years. *See* Ex. SFP-4 (nominal ROEs for 1992-1999), JA 0073; Ex. SFP-5 at 1-8 (nominal ROEs for 2000-2007), JA 0074-0081. However, under its Trended Original Cost methodology, FERC uses the *real* ROE to calculate current rates, which takes into account inflation (real ROE = nominal ROE – inflation). SFPP *does* dispute the representativeness of the inflation component and has shown that it—and thus the real ROE—is not representative of SFPP's cost of capital.

4

FERC did not find the September 2008 real ROE to be representative of SFPP's cost of capital, nor is there any basis in the record for such a finding.  Thus, for the reasons SFPP presented in its initial brief and the reasons given below, FERC's adoption of the September 2008 real ROE for SFPP is arbitrary and capricious and does not reflect reasoned decision-making.

    1.    <u>FERC's adoption of the September 2008 real ROE is not supported by substantial evidence</u>.

Respondents and Shippers suggest that FERC found the September 2008 real ROE of 7.69 percent to be representative of SFPP's cost of capital. Respondents at 31, 37; Shippers Intervenor at 10-11.  As the ID and Opinions 511 and 511-A show, the ALJ and FERC determined only that the more recent real ROEs—those for January 2009 and April 2009—were not representative.  Neither the ALJ nor FERC cited substantial evidence or provided any reasoning for their adoption of the 7.69-percent real ROE.

The ALJ rejected the use of the April 2009 real ROE, which was the most recent real ROE, and concluded only that the *nominal* ROE as of the end of the test period—*i.e.*, the nominal ROE for September 2008—should be used.  ID at P 648, JA 0320.  The ALJ said nothing about the *real* ROE for September 2008 or the inflation factor used to calculate the real ROE.  Thus, the ALJ did not provide any reasoning for adopting the 7.69-percent real ROE for September 2008.

In Opinion 511, FERC affirmed the ID's finding that the April 2009 real ROE should not be used.  Opinion 511 at P 208, JA 0485.  FERC found that the April 2009 nominal ROE and inflation factors were not representative.  *Id*. at P 209, JA 0486.  FERC also affirmed the ID's finding that SFPP should use the September 2008 real ROE.  *Id*. at P 209, JA 0486.  FERC, however, did not cite evidence indicating that the September 2008 real ROE is representative of SFPP's cost of capital.

SFPP sought rehearing and argued that FERC should follow its policy of using the most recent data in the record.  Request for Rehearing of SFPP, at 8-10 (Apr. 11, 2011), JA 0623-0625.  Alternatively, SFPP argued that the inflation factor as of the end of the test period and, thus, the real ROE as of the end of the test period are not representative of SFPP's cost of capital.  *Id.* at 2, 3, 10-14, JA 0617, 0618, 0625-0629.  SFPP offered as a suggestion that FERC adopt a representative inflation factor developed as an average of the actual inflation factors for the August 2008 through February 2011 period.  *Id.* at 14-15, JA 0629-0630.

FERC denied rehearing in Opinion 511-A.  FERC declined again to follow its policy of using the most recent ROE data in the record, finding the data was not representative.  Opinion 511-A at P 258, JA 0835.  FERC also rejected SFPP's proposal to modify the inflation factor for September 2008 and use an average

6

inflation factor, concluding that it would be improper to use an average inflation factor employing post-test-period data without similar adjustments to the nominal ROE. *Id.* at P 259, JA 0836. However, FERC again did not cite to evidence that would support a finding that the 7.69-percent real ROE is representative of SFPP's cost of capital.

Respondents argue that SFPP failed to raise its "economic troubles" argument—that the real ROE and inflation factor for September 2008 are not representative of SFPP's cost of capital—before FERC and therefore waived its right to make this argument. Respondents at 38-39. Respondents are wrong and, moreover, the waiver argument does not help them.

SFPP argued to FERC on rehearing that the 4.94-percent inflation factor used to determine the September 2008 real ROE was not representative of SFPP's cost of capital. Request for Rehearing of SFPP, at 8-10 (Apr. 11, 2011), JA 0623-0625. Indeed, SFPP detailed in its request for rehearing the unprecedented conditions prevailing in the September 2008 period (at 10-14, JA 0625-0629) and pointedly brought these conditions to FERC's attention:

> The Commission's continued reliance upon the September 2008 ROE would constitute serious error in that it reflects outdated and <u>unprecedented market conditions</u> and would embed into SFPP's rates an unreasonably low real rate of return on equity by incorporating this anomalous inflation factor.

*Id.* at 14 (emphasis added), JA 0629. SFPP clearly preserved this argument for appeal. *See Exxon Co., U.S.A. v. FERC*, 182 F.3d 30, 44 (D.C. Cir. 1999) (shipper's argument in motion for reconsideration was sufficient to preserve issue for appeal).

Furthermore, as SFPP explained in its initial brief (SFPP Initial at 25), FERC appeared, to a degree, to acknowledge that September 2008 was "an anomalous economic time period." Opinion 511-A at P 259, JA 0836. FERC also recognized that it was a "volatile economic period." *Id*. at P 256, JA 0834.

2. FERC's decision to use a 7.69-percent real ROE does not enjoy a presumption of reasonableness.

SFPP explained FERC's policy of using the most recent ROE data in the record. SFPP Initial at 6-7. That policy—if applied even-handedly—provides a presumption of fairness because, over time, the policy would result in pipelines and shippers being treated equitably. *Id.* at 22. The 7.69-percent real ROE for September 2008 does not enjoy any such presumption. *See id.* at 24.

As SFPP explained in its initial brief, FERC has no fall-back policy of using the data as of the end of the test period. *Id.* Respondents do not contest this point. Shippers attempt to muddy the water by claiming that in setting the ROE "FERC carefully considers, in each given case, whether test period data or post-test-period data are more likely to be representative of the period when the rates will be in effect." Shippers Intervenor at 5. Shippers cite *Trunkline Gas Co.*, 90 FERC ¶

8

61,017 (2000) ("*Trunkline*"), but the case does not support their position. First, while *Trunkline* states that FERC has discretion whether to use a pipeline's test period estimates or to use "other, more representative figures," (*id.* at p. 61,049), *Trunkline* recognizes that, in determining the ROE, FERC's established policy is to "use[] the most recent data" (*id.* at p. 61,117). Second, *Trunkline* does not state that, if FERC does not follow its policy of using the most recent ROE data, it will use data as of the end of the test period. Third, FERC, in addressing whether it must adopt a pipeline's test period estimates (for items other than the ROE, since for the ROE FERC's established policy is *not* to use test period data), recognized that it "may adopt other, more representative figures of historical costs such as updated actual figures if it determines that these other figures are the best, most representative evidence of the pipeline's experience." *Id.* at p. 61,049. Here, FERC failed to find, based on substantial evidence, the September 2008 real ROE to be "the best, most representative evidence of [SFPP's] experience." FERC's decision is therefore arbitrary and capricious and does not reflect reasoned decision-making.

3.    <u>No evidence in the record supports the use of the 7.69-percent real ROE for September 2008</u>.

Not only is there no finding by FERC that the 7.69-percent real ROE is representative of SFPP's cost of capital, but there is no evidence in the record that would support such a finding. The lack of such evidence is not surprising.

Because FERC's policy is to use the most recent data in the record, it would be unnecessary for witnesses to make a practice of testifying as to what was the appropriate period to use for determining the ROE.

So, for example, SFPP witness Dr. Williamson initially presented the September 2008 real ROE (Ex. SFPP-1 at 4, 20-21, JA 0051, 0067-0068; Ex. SFPP-5 at 9, JA 0082) simply because it was the most recent ROE as of the time of his direct testimony. He did not testify that it was representative of SFPP's cost of capital. Rather, consistent with FERC's policy, he presented the most recent real ROE figure available at the time of his testimony, recognizing that SFPP might, consistent with FERC's policy, later offer an even more recent real ROE percentage, which Dr. Williamson, in fact, did. The ALJ relied on the testimony of Exxon Mobil witness, Dr. Horst, to support the ALJ's decision to adopt the nominal ROE for September 2008. ID at P 648, JA 0320. Dr. Horst, however, did not address the inflation factor or the real ROE for September 2008. *See* XOM-1 at 5, 40, JA 0038, 0046. Other witnesses reviewed or proposed revisions to Dr. Williamson's calculations, but no witness specifically testified that the 7.69-percent real ROE that FERC adopted or the inflation factor used to calculate it was representative of SFPP's cost of capital. *See* Ex. ACV-1 at 38 (Mr. O'Loughlin), JA 0016; Ex. BPW-25 at 31, 38-40 (Ms. Crowe), JA 0011, 0012-0014; Ex. TES-21 at 21-25 (Mr. Ashton), JA 0019-0023. As a result, there is no evidence in the

record to support a finding that the 7.69-percent real ROE for September 2008 is representative of SFPP's cost of capital.

    4.    <u>FERC's comparison of the September 2008 real ROE to real ROEs for other periods does not demonstrate that it is representative of SFPP's cost of capital</u>.

Respondents and Shippers point out that FERC compared the September 2008 real ROE to real ROEs for other periods and suggest that the comparison is sufficient justification for FERC's decision.   Respondents at 36-38; Shippers Intervenor at 7-11.  FERC's comparison appears in Paragraph 252 of Opinion 511-A.  JA 0252.  At the outset, SFPP notes that, in comparing the September 2008 real ROE to others, FERC never states that the 7.69-percent real ROE is representative of SFPP's cost of capital.  Rather, FERC simply compares the 7.69-percent figure to the more recent figures in the record:  the real ROEs of 14.30 percent and 14.83 percent for January 2009 and April 2009, respectively, which FERC rejected, and real ROEs of 9.09 percent and 8.72 percent for February 2010 and March 2010, respectively, which are from another proceeding.   The comparison does not constitute substantial evidence that would support a finding that the September 2008 is representative of SFPP's cost of capital.

Respondents and Shippers apparently would have one believe that FERC could conclude that the 7.69-percent real ROE for September 2008 is reasonable simply because it is closer to the figures for February 2010 and March 2010 than it

11

is to the figures for January 2009 and April 2009.  There is no basis for such a conclusion.  For one thing, the 7.69 percent is the lowest of all of the percentages, and not by a small amount.  The 7.69 percent is 6.66 percentage points below the 14.30-percent real ROE for January 2009 and 7.19 percentage points below the 14.83-percent real ROE for April 2009.  Respondents and Shippers will argue that comparing 7.69 percent with the percentages FERC rejected is meaningless because the percentages for January 2009 and April 2009 are not representative.  Another way to look at it, however, is that FERC has selected a real ROE (7.69 percent) that is just a little over half of the real ROE (14.83 percent) that would have applied had FERC followed its policy of using the most recent data in the record.

FERC drew the other two figures—the 9.09-percent and 8.72-percent real ROEs for 2010—from a different proceeding.  Opinion 511 at P 209 & n.339, JA 486, 487.  There is no testimony or other support for the 2010 figures in the current record.  There is no evidence that FERC actually determined those percentages to be representative of SFPP's cost of capital in that proceeding, let alone representative of SFPP's cost of capital here.

Even if one were to put aside the fact that there is no evidentiary support for the 2010 figures, those figures do not provide substantial evidence for adopting the 7.69 percent.  The 7.69 percent is 1.40 percentage points below the 9.09-percent

12

real ROE for February 2010 and 1.03 percentage points below the 8.72-percent real ROE for March 2010.  Thus, the 2010 real ROEs do not support FERC's decision and instead reinforce SFPP's position that, after FERC decided not to use the most recent data because it is too high, FERC proceeded to adopt a real ROE for SFPP that is not representative because it is too low.

5.    Respondents' criticism of SFPP's proposal to adjust the nominal ROE for September 2008 and adjust it for reasonable inflation is without merit.

Respondents criticize SFPP's proposal to use the nominal ROE of 12.63 percent for September 2008 and adjust it for a reasonable level of inflation, calculated as an average of monthly inflation for the period August 2008 through February 2011.  Respondents at 40-41.  Respondents argue that FERC reasonably rejected SFPP's proposal based on FERC's reasoning that the inflation factor and nominal ROE must be calculated using the same time period or periods.  *Id.*

The problem with Respondents' argument—and FERC's decision—is that it assumes that SFPP has the burden to provide a solution for calculating the real ROE.  As SFPP has explained, SFPP's position in this case has been that FERC should follow its policy of using the most recent ROE data in the record.  SFPP Initial at 27.  Since FERC departed from its policy, the burden of demonstrating that the real ROE that FERC adopted is representative of SFPP's cost of capital falls upon FERC, not SFPP.  *Id*.  FERC has not done so, nor has it refuted the

13

evidence that SFPP provided that demonstrates that the inflation factor used to calculate the September 2008 real ROE is not representative.   Thus, FERC's rejection of SFPP's proposed solution cannot, by default, justify a finding that the September 2008 real ROE is representative of SFPP's cost of capital.

Finally, Respondents contend that the Court should defer to FERC's decision.  Respondents at 41-42.  In support, Respondents cite cases in which the Court deferred to FERC's policy judgments relating to rate design and "FERC resolution of factual disputes between expert witnesses." *Id.*  Neither circumstance applies to FERC's adoption of the September 2008 real ROE.   Furthermore, because FERC's selection of the September 2008 real ROE is not supported by substantial evidence, FERC did not engage in "reasoned decisionmaking—that is, a process demonstrating the connection between the facts found and the choice made." *ANR Pipeline Co. v. FERC*, 771 F.2d 507, 516 (D.C. Cir. 1985) (citations omitted).

**B.     SFPP Is Entitled to Full Application of the 2009 Index, and Respondents' and Shippers' Contrary Claims Reflect a Misinterpretation of FERC's Indexing Methodology.**

Respondents' and Shippers' claim that SFPP is not entitled to apply the full 2009 index—which is the index used to establish SFPP's West Line rates for the period July 1, 2009 to June 30, 2010—contradicts the fundamental purpose of the indexing methodology.  FERC's indexing regime is the default mechanism for the

14

setting of interstate oil pipeline rates, and provides a simplified process for pipelines to make annual forward-looking rate adjustments to account for future inflationary cost changes. Respondents and Shippers wrongly conclude that, because the indexing adjustments are calculated based on historical cost changes, the adjustments are *backward looking*. In reality, indexing adjustments are used to set *forward-looking* rates. Such adjustments use prior period cost changes only as proxies for future cost changes that will be experienced during the period the rates will be in effect. FERC's decision should be overturned, and SFPP should be permitted to apply the full 2009 index to its West Line rates.

     1.   <u>The 2009 index is not intended to recover inflationary costs incurred in 2008</u>.

Respondents' and Shippers' opposition to SFPP taking the full 2009 index is based on a fundamental misapplication of FERC's indexing methodology and a misstatement of the purpose of that methodology. They claim that SFPP is not entitled to the full 2009 index in determining its West Line rates for the period July 1, 2009 to June 30, 2010 because SFPP's 2008 cost-of-service-based rates reflect, in part, updated cost data through September 30, 2008. Respondents at 42, 44-45; Shippers Intervenor at 11-13. That argument erroneously presumes that the purpose of the 2009 index is to permit SFPP (and any other interstate oil pipeline) to adjust its rates for the July 1, 2009 to June 30, 2010 period to reflect changes in SFPP's 2008 costs. Rather, the purpose of the 2009 index is to recover inflationary

cost changes that a pipeline, such as SFPP, is expected to experience over the July 1, 2009 to June 30, 2010 period in which the 2009 indexed rates are to be in effect. SFPP Initial at 28-30.

In the orders establishing FERC's indexing methodology, FERC recognized that application of the rate index provides a simplified mechanism for pipelines to adjust their rates to reflect future "inflation-driven cost changes." *See Revisions to Oil Pipeline Regulations Pursuant to the Energy Policy Act of 1992*, FERC Stats. & Regs. [Regs. Preambles, 1991-1996] ¶ 30,985, at p. 30,948 (1993) ("Order 561"), *on reh'g*, Order 561-A, FERC Stats. & Regs. [Regs Preambles, 1991-1996] ¶ 31,000, at pp. 31,095-96 (1994) ("Order 561-A"); *see also*, *Five-Year Review of Oil Pipeline Pricing Index*, 93 FERC ¶ 61,266, at p. 61,849 (2000).  This Court also recognized this purpose in subsequent decisions, noting that the indexing methodology is "designed to enable pipelines to recover costs by allowing pipelines to raise rates at the same pace as they are predicted to experience cost increases." *Association of Oil Pipe Lines v. FERC*, 83 F.3d 1424, 1430 (D.C. Cir. 1996) (*citing* Order 561 at p. 30,941); *see also, ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 957 (D.C. Cir. 2007) (under the "indexed cap system," oil pipeline rates "are adjusted annually to reflect predictions of industry-wide changes in costs"); *Frontier Pipeline Co. v. FERC*, 452 F.3d 774, 777 (D.C. Cir. 2006) (under indexing, pipeline rate ceilings are adjusted "on the basis of a formula predicting

annual percentage changes in industry-wide pipeline costs"); *Flying J Inc. v. FERC*, 363 F.3d 495, 498 (D.C. Cir. 2004).

Respondents and Shippers claim that language in Order 561 supports their position that indexing is intended to recover prior-period cost changes. Respondents at 43; Shippers Intervenor at 13-15.  In Order 561, FERC explained that the purpose of indexing is to "preserve[] the value of just and reasonable rates in real economic terms.  This is because it takes into account inflation, thus allowing the nominal level of rates to rise in order to preserve their real value in real terms."  Order 561 at p. 30,950.  Respondents' and Shippers' arguments that the 2009 index is intended to recover changes in 2008 costs is inconsistent with FERC's position expressed in Order 561 that the rate index is intended to preserve inflation adjusted rates, *i.e.*, "the value of ... rates in real economic terms."  *Id*.

Shippers assert that SFPP has acknowledged that indexing adjustments are designed to compensate carriers for inflationary cost changes experienced during the preceding year.  Shippers Intervenor at 13 n.17.  Shippers cite to *BP West Coast Products LLC v. SFPP, L.P.*, 121 FERC ¶ 61,141, at P 3 (2007).  In the cited case, however, SFPP was simply describing the standard SFPP believed FERC should apply to evaluate the merits of a shipper's challenge to SFPP's 2005 index-based rate increases.  SFPP said nothing about the intended purpose of indexing or the costs for which the rate index was intended to recover.  *Id*. at PP 3-4.

17

SFPP acknowledges that FERC most often evaluates protests to a pipeline's index-based rate adjustments by comparing the percentage change in the pipeline's system-wide costs for the prior two years to the percentage change in the index (often referred to as the "percentage comparison test"), but that does not mean that the *purpose* of the index itself is to recover past costs. The percentage comparison test developed by FERC is simply an objective mechanism that permits FERC to evaluate, as a threshold matter, whether a challenge to an index-based rate adjustment should be investigated.

Shippers also argue that, if the 2009 index were intended to recover 2009 inflationary costs as SFPP suggests, it would be impossible for a shipper to challenge a pipeline's rate indexing adjustment because there would be no way to determine whether the index "is so substantially in excess of actual costs increases incurred," since such costs would not yet be known. Shippers Intervenor at 15. In making this argument, Shippers blur the distinction between the purpose of indexing and the test used to evaluate challenges to index-based rate adjustments. As noted above, indexing is a mechanism that permits pipelines to adjust their rates to reflect *future* inflationary cost changes. The percentage comparison test uses historical cost data that is available to FERC and to shippers and which can be used to evaluate whether FERC should investigate a pipeline's proposed index-based rate adjustment. The fact that FERC has developed an objective test, based on

18

historical cost data, to evaluate challenges to a rate index adjustment does not mean that the rate index is intended to recover past changes in costs.

In addition, Respondents' and Shippers' assertion that indexing adjustments are intended to recover past cost changes is contrary to fundamental ratemaking principles.  For example, the rule against retroactive ratemaking specifically prohibits a pipeline from adjusting current or future rates in an effort to make up for under-collections in prior periods.  *See, e.g.*, *Concord v. FERC*, 955 F.2d 67, 71 n.2 (D.C. Cir. 1992).  Accordingly, bedrock principles of ratemaking are consistent with SFPP's position that the 2009 index is intended to recover future inflationary cost changes, not changes in costs for past periods.

Because the 2009 index is intended to capture inflationary cost changes expected to occur during the period July 1, 2009 to June 30, 2010, the fact that SFPP's 2008 cost-of-service-based rates incorporate certain actual cost data through September 2008 is irrelevant to the determination of the appropriate application of the 2009 index.  FERC's ruling prohibiting SFPP from applying 75 percent of the 2009 index on the grounds that SFPP's 2008 rates were based, in part, on 2008 cost data is erroneous.

19

2.    The fact that a rate index adjustment is based on historical data does not mean that the purpose of the rate index adjustment is to recover historical costs.

FERC's explanation (and Respondents' and Shippers' arguments) for denying SFPP the full 2009 index is not bolstered by the fact that the 2009 index was calculated in part by determining the change in the Producer Price Index for Finished Goods ("PPI-FG") between 2007 and 2008.  Respondents' and Shippers' arguments boil down to the flawed claim that, because the indexing methodology uses historical data to calculate the permitted rate indexing adjustments, the purpose of indexing must be to recover past inflationary costs.  Respondents at 44-45; Shippers Intervenor at 12-14.

When FERC developed the indexing methodology, it determined that cost changes experienced by oil pipelines were comparable to the cost changes experienced by producers of goods and therefore elected to use historical PPI-FG data to estimate the cost changes to be experienced by the oil pipeline industry. SFPP Initial at 29; Order 561-A at pp. 30,095-96.  FERC also recognized that the use of historical PPI-FG data may not necessarily serve as a good indicator of future inflationary cost changes experienced by the oil pipeline industry.  Order 561 at p. 30,947.  Accordingly, FERC implemented a five-year review process under which FERC would evaluate whether to adjust its indexing methodology applicable for the next five-year period to ensure that it is reflective of what the

20

cost changes are likely to be going forward. *Id*. FERC makes this determination by comparing how well the rate indices have tracked actual oil pipeline industry cost changes during the prior five-year period—*i.e.*, how accurately the methodology predicted future cost changes. *See, e.g.*, *Five-Year Review of Oil Pipeline Pricing Index*, 93 FERC ¶ 61,266 (2000).

As the orders cited above demonstrate, in designing the indexing methodology, FERC's intent was to develop rate index adjustments that would closely correlate with actual cost changes experienced by the oil pipeline industry, which could then be used as a reasonable predictor of future changes. While Shippers attempt to undercut the importance of certain language in Order 561-A (Shippers Intervenor at 15), claiming that the language has nothing to do with the review of annual index adjustments—the reality is that FERC's discussion concerning the development of the indexing methodology illustrates the purpose of indexing, which is to permit oil pipelines to adjust their rates in anticipation of future changes in industry costs.

Respondents and Shippers attempt to distinguish certain cases, including Opinion 435-A (*SFPP, L.P.*, 91 FERC ¶ 61,135 (2000) ("Opinion 435-A")), that show (*see* SFPP Initial at 31-32) that permitting SFPP to apply the full rate indexing adjustments to estimate refunds and reparations and calculate going-forward just and reasonable rates is consistent with prior FERC orders.

Respondents at 48-50; Shippers Intervenor at 16-17. For example, Respondents recognize that in Opinion 435-A FERC applied the full rate indexing adjustments to the just and reasonable base rates to calculate going-forward rates and to estimate reparations. Respondents at 49-50. FERC adopted this approach rather than have SFPP re-calculate its cost of service for the years between the year for which FERC set the cost-of-service-based rates and when those rates actually went into effect. Respondents claim, however, that because Opinion 435-A involved challenges to the base rates being indexed, rather than challenges to the index increases themselves, that decision is not applicable here. That argument makes no sense. In Opinion 435-A, just as here, FERC determined a cost-of-service-based rate and then used rate indexing to set just and reasonable rates for subsequent years. Therefore, though there may be certain procedural differences between the Opinion 435-A proceeding and the proceeding at hand, those differences do not change the fact that, in both proceedings, FERC used the indexing methodology to establish just and reasonable rates for the years after the year for which a cost-of-service-based rate was determined. Respondents' and Shippers' attempt to distinguish Opinion 435-A has no merit.

22

3.     <u>The 2006 and 2007 Orders cited by Respondents in support of their argument actually support SFPP's position that it should be entitled to full application of the 2009 index</u>.

Respondents and Shippers argue that FERC's decision that SFPP is not entitled to full application of the 2009 index is consistent with FERC precedent, relying primarily on FERC orders issued in 2006 and 2007 that addressed SFPP's 2006 index-based rate increases. *SFPP, L.P.*, 117 FERC ¶ 61,271 (2006) ("2006 Order") and *SFPP, L.P.*, 120 FERC ¶ 61,245 (2007) ("2007 Order"). Respondents at 50-52; Shippers Intervenor at 17-18. In citing those orders, Respondents incorrectly assert that in the present case Shippers protested the 2009 index "under 18 C.F.R. § 343.2(c), alleging that the index increase is 'so substantially in excess of the actual cost increases incurred by the carrier that the rate is unjust and unreasonable.'" Respondents at 49. Shippers, however, merely claimed that SFPP was not entitled to take the index because SFPP's 2008 rates already included a portion of the costs that the 2009 index was intended to recover. In so doing, Shippers did not assert that application of the 2009 index was "so substantially in excess of the actual cost increases."

In addition, a review of the circumstances underlying the 2006 and 2007 Orders demonstrates that those orders do not support FERC's decision here. In the proceeding that led to the 2006 and 2007 Orders, SFPP had filed new cost-of-service-based rates for its East Line, to be effective on June 1, 2006, which were

based on actual cost data for calendar year 2005, as adjusted for known and measurable changes through September 2006.  2006 Order at P 1.  On May 31, 2006, the day before the new East Line cost-of-service-based rates went into effect, SFPP proposed to further increase those rates, effective July 1, 2006, to reflect full application of the 2006 index.  *Id.*

Because SFPP had just filed a cost of service, FERC had available to it projected cost data that overlapped (through September 2006) the period in which the 2006 indexed rates were to be effective.  FERC explained:

> First, there were no cost increases to SFPP's East Line rates in 2005 because the level of those rates is based on SFPP's actual 2005 costs and its projected East Line volumes, as adjusted to September 30, 2006, for known and measurable changes.  Second, as with all new rate filings, the new East Line rates at issue are based on the specific regulatory costs rather than industry wide inflation-driven costs. These new Ease [sic] Line rates are designed to recover all the relevant operating and capital costs based on the throughput stated in SFPP's May 2006 rate filing, including the allowed equity and total regulatory returns.  Thus, the additional revenue from the 2006 indexed increase of 6.15 percent results in an over-recovery of SFPP's specific East Line costs in SFPP's May 1, 2006 filing.  The real equity return contained in that filing was 9.20 percent and the overall weighted real return was 7.80 percent.  As all other 2005 East Line rate costs were covered in the new East Line rates, the application of the 6.15 percent index factor flows directly to the return component of those rates.  This increases the real equity return to 15.35 percent and the overall return to 13.95 percent.  Returns of this size result in East Line rates that are not just and reasonable . . . .

2006 Order at P 5 (footnotes omitted).

24

FERC did not conduct a similar analysis in this case, nor could it have.  In this proceeding, FERC has ruled that SFPP is entitled to recover only a portion of the 2009 index adjustment.  To make a determination like FERC made in the 2006 and 2007 Orders with respect to the 2009 index adjustment would require that FERC have available to it 2009 cost data that overlaps with the 2009-2010 period in which the 2009 index-based rate adjustments would be in effect.  The only cost data available to FERC in this proceeding is for 2007 and 2008.

In short, the 2006 and 2007 Orders do not support FERC's decision here.  Moreover, those orders illustrate the type of analysis that FERC would be required to make before it could determine that permitting SFPP to take the entire 2009 index would result in West Line rates that exceed a just and reasonable level.  FERC's order denying SFPP 75 percent of the 2009 index is arbitrary and capricious and not the result of reasoned decision-making.  The Court should reverse FERC's ruling in Opinions 511-A and 511-B (*SFPP, L.P.*, 150 FERC ¶ 61,096 (2015)) and permit SFPP to apply the full amount of the 2009 index adjustment.

### III.
### <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, SFPP submits that the limited FERC rulings in Opinions 511, 511-A, and 511-B for which SFPP is seeking review were not the product of reasoned decision-making and therefore should be reversed by this Court.

Respectfully submitted,

*/s/ Charles F. Caldwell*

| | |
|---|---|
| Daniel W. Sanborn | Charles F. Caldwell |
| Assistant General Counsel | Dean H. Lefler |
| Kinder Morgan, Inc. | Caldwell Boudreaux Lefler PLLC |
| 1001 Louisiana St., Suite 1000 | 1800 West Loop South, Suite 1680 |
| Houston, TX 77002 | Houston, TX 77027 |
| (713) 420-6024 | (713) 357-6228 |

ATTORNEYS FOR SFPP, L.P.

January 15, 2016
February 5, 2016 (Final)
March 4, 2016 (Final with errata)

26

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This brief contains 5,924 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. R. 32(a)(2), and complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

This brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14 pt. typeface and complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

*/s/ Dean H. Lefler*
Dean H. Lefler
Caldwell Boudreaux Lefler PLLC
1800 West Loop South, Suite 1680
Houston, TX 77027
(713) 357-6234

*Counsel for SFPP, L.P.*

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and the Court's Administrative Order Regarding Electronic Case Filing, I hereby certify that I have this day caused to be served copies of the foregoing brief upon counsel listed in the Service Preference Report via email through the Court's CM/ECF system.

Dated this 4th day of March, 2016.

*/s/ Dean H. Lefler*
Dean H. Lefler
Caldwell Boudreaux Lefler PLLC
1800 West Loop South, Suite 1680
Houston, TX  77027

FEDERAL ENERGY REGULATORY
COMMISSION

Robert H. Solomon
Office of the Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Room 9A-01
Washington, DC 20426
robert.solomon@ferc.gov

Elizabeth Evans Rylander, Attorney
Office of the Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426
elizabeth.rylander@ferc.gov

Lisa Barbas Luftig, Attorney
Office of General Counsel
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426
lisa.luftig@ferc.gov

Beth G. Pacella, Attorney
Office of the Solicitor
Federal Energy Regulatory Commission
888 First Street, NE
Washington, DC 20426
beth.pacella@ferc.gov

| | |
|---|---|
| UNITED STATES OF AMERICA | Robert J. Wiggers<br>U.S. Department of Justice<br>Antitrust Division, Appellate Sec.<br>950 Pennsylvania Avenue, NW<br>Room 3224<br>Washington, DC 20530-0001<br>robert.wiggers@usdoj.gov |
| | James Joseph Fredricks<br>U.S. Department of Justice<br>Antitrust Division, Appellate Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br>james.fredricks@usdoj.gov |
| | William J. Baer<br>U.S. Department of Justice<br>Office of the Assistant Attorney General<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 |
| BP WEST COAST PRODUCTS LLC | Thomas J. Eastment<br>Gregory S. Wagner<br>Baker Botts LLP<br>1299 Pennsylvania Avenue, N.W.<br>The Warner, Suite 1300 West<br>Washington, D.C. 20004-2400<br>tom.eastmentt@bakerbotts.com<br>gregory.wagner@bakerbotts.com |
| PHILLIPS 66 COMPANY, SUCCESSOR TO CONOCOPHILLIPS COMPANY | Marcus W. Sisk<br>Frederick G. Jauss<br>Dorsey & Whitney LLP<br>1801 K Street, NW<br>Suite 750<br>Washington, D.C. 20006<br>sisk.marcus@dorsey.com<br>jauss.fred@dorsey.com |

CHEVRON PRODUCTS COMPANY

Steven A. Adducci
Venable LLP
575 7th St, NW
Washington, DC 20004-1601
saadducci@venable.com


EXXONMOBIL OIL CORPORATION

Thomas J. Eastment
Gregory S. Wagner
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
The Warner, Suite 1300 West
Washington, D.C. 20004-2400
tom.eastment@bakerbotts.com
gregory.wagner@bakerbotts.com


UNITED AIRLINES, INC.,
DELTA AIR LINES, INC.,
SOUTHWEST AIRLINES CO.,
AND AMERICAN AIRLINES, INC.

Richard E. Powers, Jr.
Venable LLP
575 7th St NW
Washington, DC 20004-1601
repowers@venable.com


TESORO REFINING AND
MARKETING COMPANY

Melvin Goldstein
Goldstein & Associates, P.C.
1757 P Street, NW
Washington, D.C. 20036
mgoldstein@goldstein-law.com


VALERO MARKETING AND
SUPPLY COMPANY

Steven A. Adducci
Venable LLP
575 7th St, NW
Washington, DC 20004-1601
saadducci@venable.com